UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

QINARD LAMAR COLLINS,

      Petitioner,

v.                        CASE NO. 3:14-cv-47-J-32PDB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____/

APPENDIX

PAMELA JO BONDI
ATTORNEY GENERAL

ROBIN A. COMPTON
ASSISTANT ATTORNEY GENERAL
Fla. Bar #0846864
444 Seabreeze Blvd.
5th Floor
Daytona Beach, FL 32118
(386) 238-4990
FAX (386)238-4997
Robin.Compton@myfloridalegal.com

COUNSEL FOR RESPONDENTS

INDEX TO APPENDIX

INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . A

NOTICE OF STATE'S INTENT TO SEEK DEATH PENALTY . . . . . . . . B

MOTION FOR APPOINTMENT OF PATHOLOGIST/PEDIATRICIAN EXPERT . . . C

ORDER GRANTING DEFENSE MOTION FOR EXPERT . . . . . . . . . . D

NOTICE OF INTENT TO RELY ON COLLATERAL CRIME EVIDENCE . . . . . E

NOTIFICATION OF PSI . . . . . . . . . . . . . . . . . . . F

JUDGMENT AND SENTENCE . . . . . . . . . . . . . . . . . . G

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . H

PLEA COLLOQUY TRANSCRIPT 8/8/03 . . . . . . . . . . . . . . I

SENTENCING TRANSCRIPT 10/10/03 . . . . . . . . . . . . . . J

INITIAL BRIEF . . . . . . . . . . . . . . . . . . . . . K

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . L

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . M

RULE 3.850 MOTION FOR POSTCONVICTION RELIEF . . . . . . . . . N

ORDER ON MOTION FOR POSTCONVICTION RELIEF . . . . . . . . . . O

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . P

INITIAL BRIEF . . . . . . . . . . . . . . . . . . . . . Q

STATE'S NOTICE . . . . . . . . . . . . . . . . . . . . . R

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . S

MOTION FOR REHEARING . . . . . . . . . . . . . . . . . . T

ORDER DENYING REHEARING . . . . . . . . . . . . . . . . . U

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . V

SECOND RULE 3.850 MOTION FOR POSTCONVICTION RELIEF . . . . . . W

MEMORANDUM OF SUPPORTING FACTS  . . . . . . . . . . . . . . . . .  X

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . . .  Y

MASTER EXHIBIT A INDEX  . . . . . . . . . . . . . . . . . . . . .  Z

MASTER EXHIBIT B INDEX  . . . . . . . . . . . . . . . . . . . . .  AA

ORDER ON MOTION FOR POSTCONVICTION RELIEF . . . . . . . . . .  BB

MOTION FOR REHEARING  . . . . . . . . . . . . . . . . . . . . . .  CC

ORDER DENYING REHEARING . . . . . . . . . . . . . . . . . . . . .  DD

NOTICE OF APPEAL  . . . . . . . . . . . . . . . . . . . . . . . .  EE

INITIAL BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . .  FF

STATE'S RESPONSE  . . . . . . . . . . . . . . . . . . . . . . . .  GG

FIFTH DCA DECISION  . . . . . . . . . . . . . . . . . . . . . . .  HH

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . . . . . .  II



IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

STATE OF FLORIDA

CASE NO: CF01-1102
DIVISION: 56B

VS.

CLERK # 011011

QINARD LAMAR COLLINS
BLACK; MALE; DOB; 3/22/76
SS# 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

## INDICTMENT

The Fall Term Grand Jury, in and for St. Johns County, Florida, empanelled and sworn to inquire and true presentment make, hereby, in the name of and by the authority of the State of Florida, brings this prosecution and makes the following charge or charges in TWO count:

### COUNT I

CHARGE:   AGGRAVATED CHILD ABUSE, in violation of F.S. 827.03(2)

SPECIFICATION OF CHARGE:   In that QINARD LAMAR COLLINS, on or between the 17th day of March, 2001, and to include the 1st day of April, 2001, and on divers days inbetween, within St. Johns County, Florida, did then and there willfully torture, and/or maliciously punish, to wit: QINARD COLLINS JR., a child ten (10) months of age, by biting, striking, punching, pinching or battering.

### COUNT II

CHARGE:   FIRST DEGREE MURDER, in violation of F.S. 782.04(1)(a)2

SPECIFICATIONS OF CHARGE:   In that QINARD LAMAR COLLINS, on or about the 2ND day of April, 2001, within St. Johns County, Florida, did then and there unlawfully, while engaged in the perpetration or attempted perpetration of the offense of AGGRAVATED CHILD ABUSE, kill and murder Qinard Collins Jr., a human being, by hitting and/or shaking and/or striking said child on or about his head causing abusive head injury.

A TRUE BILL

_Debra Allen Flaherty_
FOREPERSON OF THE GRAND JURY

I, the undersigned State Attorney, as authorized and required by law, have advised the Grand Jury returning this Indictment.

_John Tanner_
JOHN TANNER
STATE ATTORNEY
Florida Bar Number 0106174

This Indictment presented by the aforesaid Grand Jury in open court, this 1st day of MAY, 2001, and on the 1st day of MAY, 2001, at the hour of ___11:45am___, was filed by me.

_Christy J. Maht_
CLERK OF THE COURT                                    26

# B

IN THE CIRCUIT COURT IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO. CF01-1102

STATE OF FLORIDA

VS

QINARD COLLINS SR.
DEFENDANT

_____/

CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY FL
01 SEP 26 PM 1:56
FILED

**NOTICE OF STATE=S INTENT
TO SEEK THE DEATH PENALTY**

The State of Florida, by and through the undersigned Assistant State Attorney, pursuant to Rule 3.202, Fla.R.Crim.Pro. hereby informs the Court that it will seek the death penalty if the Defendant is convicted of Murder in the First Degree in the above-styled case.

Respectfully submitted this 26 day of September, 2001.

*Maureen Sullivan Christine*

MAUREEN SULLIVAN CHRISTINE
Assistant State Attorney
Fla. Bar No. 0399213
4010 Lewis Speedway, Room 252
St. Augustine, Florida 32095

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by hand/u.s. mail to Joseph Anthony, Attorney for the Defendant, this 26 day of September, 2001.

*Maureen Sullivan Christine*

MAUREEN SULLLIVAN CHRISTINE
Assistant State Attorney
Fla. Bar No. 0399213

PAPER NO. 44   CASE NO. CF01-1102
31

7.3F.D9



IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO:    CF01-1102
DIVISION:   56B

STATE OF FLORIDA

vs

QINARD COLLINS,

Defendant

**MOTION FOR APPOINTMENT
OF PATHOLOGIST/PEDIATRICIAN EXPERT**

The undersigned attorney, counsel for Defendant, QINARD COLLINS, pursuant to Rule

3.216(a), Florida Rules of Criminal Procedure, moves this Court to issue an order appointing one

expert, Matthew A. Siebel, M.D., to examine Defendant in order to assist in the preparation of

his defense, and further order such expert to report only to the attorney for the Defendant.  As

grounds for this motion the undersigned attorney states the following:

1.  Defendant has been adjudged to be insolvent or partially insolvent.

2.  Counsel believes that there is sufficient grounds to employ an expert to assist counsel

in the preparation of the defense.

WHEREFORE, Defendant respectfully requests that this Court will grant this motion and

appoint one expert to assist in the preparation of the defense.

Respectfully submitted,

JAMES B. GIBSON
PUBLIC DEFENDER

BY:

JOSEPH D. ANTHONY III
Assistant Public Defender
FLORIDA BAR NUMBER: 0935440

BC084

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing Motion for Appointment

of Pathologist/Pediatrician Expert has been furnished to the Office of the State Attorney, St.

Johns County, St. Augustine, Florida, by hand delivery,

this _4th_ day of May, 2002.

Attorney

## VITAE

**MATTHEW A. SEIBEL, M.D.**
601 West Michigan St.
Orlando, Florida 32805
(407) 317-7430
85 West Miller St., STE 204
Orlando, FL.  32806
Business Phone:  (407) 237-6326

### EDUCATION

University of Florida, Gainesville, Florida
Senior Pediatric Resident, July 1983-June 1984

University of Colorado, Denver, Colorado
Junior Pediatric Resident, July 1982-June 1983

University of Colorado, Denver, Colorado
Pediatric Internship, July 1981-June 1982

Howard University College of Medicine, Washington, D.C.
Medical School, 1977-1981

University of Colorado, Boulder, Colorado
B.A.-Molecular, Cellualr Biology, 1973-1977

### EMPLOYMENT

**Medical Director**
Child Protection Team, Arnold Palmer Hospital For Children &
Women, 1414 South Kuhl Avenue, Orlando, Florida  32806
July 1988 - **Present.**

**Medical Consultant**
Child Protection Team, Arnold Palmer Hospital For Children &
Women, January 1985 - **Present.**

**Private Practice - General Pediatrics**
Orlando Health Care Group (OHCG)
300 North Lake Destiny Road
Maitland, Florida  32751

   **Full-Time Pediatric Clinician -**  Primary Care pediatric
   practice. (June 1984 - September 1999)

2.

**Chief of Pediatrics** - Include clinical and personnel management of full-time and part-time pediatricians. Program planning and development for all OHCG pediatric projects. (January 1987 - January 1991)

**Board of Directors, Orlando Health Care Group** - For Physician owned multi-specialty primary care group with 50,000 members HMO, with clinical and administrative responsibilities. (January 1987 - January 1991)

**Clinical Affairs and Pediatric Administrator** - Responsible for pediatric affairs, program development, and credentialing with Prudential PPO. (January 1987 - December 1994)

**Chairman of Pharmacy and Therapeutic Committee** - Responsible for Quality Assurance and HMO Pharmacy formulary. (1985 - 1997)

**Vice Chairman; Department of Pediatrics - Arnold Palmer Hospital for Children and Women** (July 1991 - June 1994)

**Teaching Attending; Orlando Regional Healthcare System / Arnold Palmer Hospital for Children and Women** - Supervision of Pediatric physicians on the wards and in the outpatient clinic / Lectures for teaching program. (1989 - **Present**)

**Associate Director of Community Medicine - Arnold Palmer Hospital for Children and Women** (July 1996 - September 1999)

**Pediatric Hospitalist - Arnold Palmer Hospital for Children and Women** - (October 1999 - Present)

### Tests

| | | |
|---|---|---|
| Florida License | - | April 1987 |
| American Board of Pediatrics | - | September 1984 (written) |
| (Board Certified) | | June 1986 (oral) |
| National Board of Med. Ex. | - | 1981 Part III |
| National Board of Med. Ex. | - | 1979 Part II |
| National Board of Med. Ex. | - | 1978 Part I |

### Field of Child Abuse and Neglect

- Training - Residency 1981/83 - Supervised by Dr. R. Krugman, M.D., Director - C. Henry Kemp Center, Denver, Colorado.

77

3

- Received over 100 continued education hours in the field of Child Abuse and Neglect from May 1985 thru January 1988.

- Regular training of residents from Pediatrics, Emergency Medicine and Family Practice.

### Professional Organizations

Fellow - American Academy of Pediatrics
          Member of the subsection for Child Abuse and Neglect

Central Florida Pediatric Society
          Member in good standing
          Vice president 7/01 - 7/02
          President Elect for year 7/02 - 7/03

### Publications

"Exchange Transfusion in the Neonate", Pediatric Transfusion Medicine, Kasprisin,D., Luban,N., pp 43-45, CRC Press, 1987.

"Pharmacokinetics of Chronic Oral Verapamil Therapy in Infants and Children with SVT"; Abstract, American Academy of Pediatrics, Fall Session, Washington, D.C., 1986.

"Mandatory Reporting of Child Abuse," Florida Department of Professional Regulation Journal, Fall, 1992.

"The Physician's Role in Confirming the Diagnosis", Munchausen By Proxy Syndrome, Parnell, T., Day, D., pp68-94, Sage Publications, 1998

### Presentations

Pediatrics in an HMO Setting - Presented to the Florida Alumni Association, Howie In the Hills,Florida, May 1987.

Diagnosis of Child Abuse and Neglect - Third Annual Orlando Regional Medical Center Winter Conference, Breakenridge,Colorado, March 1988.

4

Diagnosis of Child Abuse and Neglect - Fourth Annual Orlando Regional Medical Center Winter Conference, Winter Park, Colorado, March 1989.

Radiologic Diagnosis of Child Abuse - National Association of Orthopedic Nurses, St. Petersburg, Florida, June 1990.

Radiologic Diagnosis of Child Abuse - Seventh Annual Child Abuse and Neglect Conference, State of Florida Department of Health and Rehabilitative Services, Kissimmee, Florida, September 1990.

Grand Rounds/Sexual Abuse - Arnold Palmer Hospital for Children and Women, Orlando, Florida, March 1991.

Grand Rounds/Munchausen Syndrome by Proxy - Arnold Palmer Hospital for Children and Women, Orlando, Florida, January 1992.

Munchausen Syndrome by Proxy - Sixth Annual Orlando Regional Medical Center Winter Conference, Keystone, Colorado, March 1992.

Current Issues in Child Abuse - Pediatric Critical Care Nursing Seminar, Orlando, Florida, September 1992.

Colposcopic Findings of Sexual Abuse - Child Protection Team Medical Directors and CPT Team Coordinators Conference, Orlando, Florida, October 1992.

Munchausen Syndrome by Proxy - Protocol for Intervention, Fourth Annual European Conference on Child Abuse, Padua, Italy, March 1993.

Physical Findings of Sexual Abuse - Florida Association of Criminal Defense Lawyers, Annual Meeting, June, 1993.

Munchausen Syndrome by Proxy - State CPT Medical Directors Meeting, Orlando, FL., September 1993.

Physical Findings of Sexual Abuse - National Association of Criminal Defense Lawyers, Washington, D.C., April 1994.

Munchausen Syndrome by Proxy Symposium - Identifying Cases by Reviewing Medical Records - American Psychiatric Association Convention, Los Angeles, California, August 1994.

Current Issues in Child Abuse - Wayne County Bar Association, Detroit, Michigan, September 1994

5

Pediatrics and the Law - Pediatric Grand Rounds, Arnold Palmer Hospital for Children and Women, Orlando, Florida, June 1995.

The Impact of Managed Care on the Risks of Pediatric Services - MMI Risk Management Resources, Inc. , Chicago, IL., May 1996

Clinical Update-Child Sexual Abuse, Hillsborough County Bar and Public Defenders Office, May 1997

Identifying Cases of Munchausen by Proxy Syndrome, The Orlando Model, Suncoast Child Protection Team, June 1997

Update of Risks Associated with Providing Pediatric Care Under Managed Care, MMI Risk Management Resources, Inc. , Chicago, IL., August 1997

Medical Diagnosis; Munchausen by Proxy Syndrome, National Association of School Psychologists 1998 Annual Meeting, Orlando, FL., April 1998

Update - Physical Finding / Child Sexual Abuse, Orlando Regional Medical Center; Pediatric and Emergency Medical Conference, Orlando, FL., June 1998

Risks Associated With Providing Pediatric Care in a Managed Care Setting, MMI Risk Management Resources, Inc. , Chicago, IL., August 1998

How To try A Child Molestation Case, Georgia Indigent Defense Council, Mableton, Georgia, May 1999

Orthopedic Findings in Child Abuse, Arnold Palmer Hospital Department of Pediatric Orthopedics, Grand Rounds, Orland, FL., October 1999

Child Abuse Update 2001- Current Literature, Arnold Palmer Children's Hospital Department of Pediatrics, Pediatric Grand Rounds, Orlando, FL., July 2001

Burns in Children, Child Protection Team Medical Director's Conference, Tampa, FL., November 2, 2001



IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO:    CF01-1102
DIVISION:    56B

CIR CT
MINUTE 258 PAGE 836

STATE OF FLORIDA

vs

QINARD COLLINS,

          Defendant

## ORDER GRANTING DEFENSE MOTION
## FOR
## COURT APPOINTED PATHOLOGIST/PEDIATRICIAN

**THIS CAUSE,** having come before this Court this date, and it appearing to the

Court that it is necessary to appoint an expert Pathologist/Pediatrician to assist Defendant

in preparing his defense, it is

**ORDERED**

Matthew A. Siebel, M.D., 601 West Michigan Street, Orlando, Florida 32805

(407) 317-7430, is hereby appointed to assist Defendant in the above styled cause.

**DONE AND ORDERED** in Chambers at St. Augustine, St. Johns County,

Florida, this ___ day of May, 2002.

**ROBERT K. MATHIS**
**CIRCUIT COURT JUDGE**

cc:
Office of Public Defender
Office of State Attorney
Matthew A. Siebel, M.D.

81

BC128

Paper No. 85  Case No. CF01-1102

E

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT, IN AND
FOR ST. JOHNS COUNTY, FLORIDA.

STATE OF FLORIDA

CASE NO.: CF01-1102
DIVISION: 56

v.

QINARD LAMAR COLLINS,

    Defendant.
_____/

## NOTICE OF INTENT TO RELY ON COLLATERAL CRIMES EVIDENCE

COMES NOW the State of Florida by and through the undersigned Assistant State Attorney and pursuant to 90.404(2) F.S. serves notice that the State intends to rely on the following collateral crime evidence at the trial of this matter:

1.    That QINARD LAMAR COLLINS, had abused and threatened to hurt and abuse Carrie Canova prior to April 2, 2001.

2.    That on or about March 17, 2001, Carrie Canova returned home from the hospital and noticed injuries to the victim that were inflicted by the Defendant.

3.    That on or about March 28th or 29th, 2001, QINARD LAMAR COLLINS, struck the victim in the face.

4.    That QINARD LAMAR COLLINS threatened and injured the victim between February 28, 2001, and April 2, 2001.

5.    That QINARD LAMAR COLLINS struck a puppy with hammer because the puppy was a "weakling."

6.    More particulars concerning the aforementioned allegations can be found in CR number 01-092146, the affidavits, and the deposition of Carrie Canova, a copy of which is attached has been previously provided to defendant through Discovery.

7.    The State avers that all of the above crimes, wrongs, or acts are admissible and relevant to prove a material fact in issue, i.e., corroborate the testimony of the victim, to demonstrate the relationship between the defendant and the victim, for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or

**102**

C830A                                107.2  CF01-1102

accident, and are not offered solely to prove propensity or bad character.


Respectfully submitted this 3rd day of  September,  2002.


NOAH C. MCKINNON, JR.
ASSISTANT STATE ATTORNEY
FLORIDA BAR NUMBER:108598

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to JOSEPH ANTHONY, III, Public Defender's Office, Attorney for Defendant, by hand delivery this 3rd day of September, 2002.


NOAH C. MCKINNON, JR.
ASSISTANT STATE ATTORNEY
FLORIDA BAR NUMBER:108598

103



NOTIFICATION RE: PRE-SENTENCE                    IN THE CIRCUIT COURT, SEVENTH
INVESTIGATION                                    JUDICIAL CIRCUIT, IN AND FOR
----------------------------                     ST. JOHNS COUNTY, FLORIDA
STATE OF FLORIDA                                 CASE# CF01-1102
        VS
QINARD LAMAR COLLINS

CHARGE(S):

Ct 1 827.03(2) AGGRAVATED CHILD ABUSE
Ct 2 782.04(1)(a)2 FIRST DEGREE MURDER

On August 8th, 2003, QINARD LAMAR COLLINS age 27, the defendant,
entered a plea of NOLO CONTENDERE to:

Ct 2 782.04(1)(b)2 SECOND DEGREE MURDER [1F]

The Honorable ROBERT K MATHIS, Circuit Judge, has Ordered a
Pre-Sentence Investigation.

Attached, herewith, is a copy of the Information pertaining to the above
named defendants.

Dated: August 8, 2003

                                        CHERYL STRICKLAND
                                        CLERK OF CIRCUIT COURT
                                        BY: _____
                                        DEPUTY CLERK

Attachment:

                Image#_____Paper#_____Case# CF01-1102

**686**



CIR CT
MINUTE 279 PAGE 209

Defendant: <u>Qinard</u> Lamar Collins    Case Number: <u>CF01-1102</u>:

In the Circuit Court Seventh Judicial

Circuit, in and for St. Johns County, FL

State of Florida                                          Division: 56

vs.

**Qinard Lamar Collins**
Defendant
SSN _____

**JUDGMENT**

The defendant, **Qinard Lamar Collins** , being personally before this court represented by Joseph Anthony, the attorney of record, and the state represented by _ Noah McKinnon___ , and having  entered a plea of nolo contendre   to the following crime(s):

| Count | Crime | Offense Statute Number(s) | Deg of Crime | Case Number | OBTS Number |
|-------|-------|---------------------------|--------------|-------------|-------------|
| TWO | Second Degree Murder | 782.04(1)(b)2 | 1F | **CF01-1102** | |
| | | | | | |

☒ and no cause being shown why the defendant should not be adjudicated guilty, IT IS ORDERED THAT the defendant is hereby ADJUDICATED GUILTY of the above crime(s).

☒ and having been convicted or found guilty of, or having entered a plea of nolo contendre or guilty, regardless of  adjudication, to attempts or offenses relating to sexual battery (ch. 794), lewd and lascivious conduct (ch. 800), or murder (s. 782.04), aggravated battery (s. 784.045), car jacking (s. 812.133), or home invasion robbery (s. 812.135), burglary (s. 810.02), or any other offense specified in section 943.325, the defendant shall be required to submit blood specimens pursuant to the order attached hereto.

☐ and good cause being shown, IT IS ORDERED THAT ADJUDICATION OF GUILT BE WITHHELD.

**691**

Paper No. 259 Case No. CF01-1102

CIR CTE **279** PAGE **210**
MINUTE

Defendant: Qinard Lamar Collins   Case Number: CF01-1102

State of Florida

v.

**Qinard Lamar Collins**
Defendant                                    Case Number: **CF01-1102**

# FINGERPRINTS OF DEFENDANT

| 1. Right Thumb | 2.Right Index | 3.Right Middle | 4.Right Ring | 5.Right Little |
|---|---|---|---|---|
| | | | | |
| 6.Left Thumb | 7.Left Index | 8.Left Middle | 9.Left Ring | 10.Left Little |
| | | | | |

Fingerprints taken by: _____  _____DEP Sheriff_____
                            Name                         Title

I HEREBY CERTIFY that the above and foregoing are the fingerprints of the defendant, **Qinard Lamar Collins,**
and that they were placed thereon by the defendant in my presence in open court this date.

DONE AND ORDERED in open court in St. Johns County, Florida this 10<th> day of October, 2003.

_____
**Robert K. Mathis, Circuit Court Judge**

4

**692**

Defendant: <u>Qinard **Lamar Collins**</u>   Case Number: <u>CF01-1102</u>:

# SENTENCE
### (As to Count II )

The defendant, being personally before this court, accompanied by  Joseph Anthony , the defendant's attorney of record,  and having been adjudicated guilty herein, and the court having given defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the defendant should not be sentenced as provided by law, and no cause bring shown

(check one if applicable)

☐   and the Court having on _____ deferred imposition of sentence until this date.

☐   and the Court having previously entered a judgment in this case on _____ now resentences the defendant.

☐   and the Court having placed defendant on probation/community control and having subsequently revoked the defendant's probation/community control.

**It Is The Sentence Of The Court That:**

☐   The defendant pay a fine of $_____ , pursuant to section 775.083, Florida Statutes, plus $_____ as the 5% surcharge    required by section 960.25, Florida Statutes

☒   The defendant is hereby committed to the custody of the Department of Corrections.

☐   The defendant is hereby committed to the custody of the Sheriff of St. Johns County, Florida.

☐   The defendant is sentenced as a youthful offender in accordance with section 958.04, Florida Statutes.

**To Be Imprisoned (Check one; unmarked sections are inapplicable):**

☐   For a term of natural life.

☒   For a term of <u>30 years</u>.

☐   Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this order.

**If "split" sentence, complete the appropriate paragraph.**

☐   Followed by a period of _____ on probation/community control under the supervision of the Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered herein.

☐   However, after serving a period of _____ imprisonment in, _____ the balance of the sentence shall be suspended and the defendant shall be place on probation/community control for a period _____ of under supervision of the Department of Corrections according to the terms and conditions of probation/community control set forth in a separate order entered herein.

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before the defendant begins service of the supervision terms.

Defendant: <u>Qinard</u> **Lamar Collins**   Case Number: <u>CF01-1102</u>:

Defendant: **Qinard Lamar Collins**

# SPECIAL PROVISIONS

### (*As to Count II* )

By appropriate notation, the following provisions apply to the sentence imposed:

**<u>Mandatory/Minimum Provisions</u>:**

| | | |
|---|---|---|
| Firearm | ☐ | It is further ordered that the 3-year minimum imprisonment provisions of section 775.087(2), Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Drug Trafficking | ☐ | It is further ordered that the _____ mandatory minimum imprisonment provision of section 893.135(1), Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Controlled Substance (within 1000 ft. of school) | ☐ | It is further ordered that the 3-year minimum imprisonment provision of section 893.13(1)(e)1, Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Habitual Felony Offender | ☐ | The defendant is adjudicated a habitual felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(a), Florida Statutes. The requisite findings by the court are set forth in a separate order or stated on the record in open court. |
| Habitual Violent Felony Offender | ☐ | The defendant is adjudicated a habitual violent felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(b), Florida Statutes. A minimum term of _____ year(s) must be served prior to release. The requisite findings of the Court are set forth in a separate order or stated on the record in open court. |
| Law Enforcement Protection Act | ☐ | It is further ordered that the defendant shall serve a minimum of _____ years before release in accordance with  section 775.0823, Florida Statutes. |
| Capital Offense | ☐ | It is further ordered that the defendant shall serve no less than 25 years in accordance with the provisions of section 775.082(1), Florida Statutes. |
| Short-Barreled Shotgun, Rifle, Machine Gun | ☐ | It is further ordered that the 5-year minimum provisions of section 790.221(2), Florida Statutes, are hereby imposed for the sentence specified in this count. |
| Continuing Criminal Enterprise | ☐ | It is further ordered that the 25-year minimum sentence provisions of section 893.20, Florida Statutes, are hereby imposed for the sentence specified in this count. |

**<u>Other Provisions</u>:**

| | | |
|---|---|---|
| Retention of Jurisdiction | ☐ | The court retains jurisdiction over the defendant pursuant to Jurisdiction section 947.16(3), Florida Statutes (1983) |
| Jail Credit | ☒ | It is further ordered that the defendant shall be allowed a total of <u>862</u> days as credit for time incarcerated before imposition of this sentence. |
| **<u>Other</u>:** | ☐ | |

**694**

OR CT P
MINUTE 279 PAGE 215

Defendant: <u>Qinard</u> **Lamar Collins**   Case Number: <u>CF01-1102</u>:

Credit for Time Served
In Resentencing after
Violation of Probation
Or Community Control

☐ It is further ordered that the defendant be allowed _____ days time served between date of arrest as a violator following release from prison to the date of resentencing. The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served and unforfeited gain time previously awarded on case/count _____ (Offenses committed before October 1, 1989).

☐ It is further ordered that the defendant be allowed _____ days time served between date of arrest as a violator following release from prison to the date of resentencing. The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served on case/count _____ (Offenses committed between October 1, 1989, and December 31, 1993).

☐ The Court deems the unforfeited gain time previously awarded on the above case/count forfeited under section 948.06(6).

☐ The Court allows unforfeited gain time previously awarded on the above case/count. (Gain time may be subject to forfeiture by the Department of Corrections under section 944.28(1)).

☐ It is further ordered that the defendant be allowed _____ days time served between date of arrest as a violator following release from prison to the date of re-sentencing. The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served only pursuant to section 921.0017, Florida Statutes, on case/count _____ (Offenses committed on or after January 1, 1994)

Consecutive/
Concurrent As
To Other Counts

☐ It is further ordered that the sentence imposed for this count shall run (check one)
☐ Consecutive to ☐ Concurrent with sentence set forth in count _____ of this case.

Consecutive/Concurrent
As To Other Convictions

☐ It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run (check one) ☐ consecutive to ☐ concurrent with the following: (check one)
☐ any active sentence being served.

☐ Specific sentences: _____.

In the event the above sentence is to the Department of Corrections, the Sheriff of St. Johns County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other document specified by Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within 30 days from this date with the clerk of this court and the defendant's right to assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____.

DONE AND ORDERED in open court at St. Johns County, Florida this <u>10th day of October, 2003</u>.

Robert K. Mathis, Circuit Court Judge

7

**695**

Defendant: Qinard **Lamar** Collins    Case Number: <u>CF01-1102</u>
IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT,
IN AND FOR  ST. JOHNS COUNTY, FLORIDA

STATE OF FLORIDA

CASE NUMBER: **CF01-1102**
DIVISION 56

VS.

**Qinard Lamar Collins**
DEFENDANT

# FINAL JUDGMENT FOR CHARGES/COSTS/FEES
### (Costs are assessed by case)

## MANDATORY COSTS/FEES:

| | |
|---|---|
| $50.00 | Pursuant to F.S. 938.03, Crimes Compensation Trust Fund. (Statutorily mandated unless specifically waived by court on the record in detail.)  Reason, if waived _____. |
| $3.00 | As a court cost pursuant to F.S. 938.01, Criminal Justice Trust Fund. |
| $2.00 | As a court cost pursuant to F.S. 938.15, Criminal Justice Education by Municipalities and Counties. |
| $200.00 | Pursuant to F.S. 938.05, Local Government Criminal Justice Trust Fund (Mandatory cost of $200.00 for Felonies, $50.00 for Misdemeanors, and $50.00 for Criminal Traffic Offenses). |
| $3.00 | As a court cost pursuant to F.S. 938.19, Teen Court Cost. |
| $50.00  Per day | Costs of Incarceration pursuant F.S. 960.293 2 b |

## FINES:
### (Only applicable if indicated)

☐ Total fine and 5% surcharge in the amount of $_____ pursuant to F.S. 775.083(1) & 938.04.
☐ Fine assessed by authority of F.S. 775.0835(1), in the amount of $_____ (not to exceed $10,000) when crime resulted in the death or injury of another person.
☐ Fine assessed in the amount of $_____ for violation of the Game and Fresh Water fish rules concerning endangered or threatened species pursuant to F.S.372.662, 372.663, 372.667, or 372.671.
☐ Fine for violation of Section 893, F.S. 316.193, 856.011, 856.015, Chapter 562, Chapter 567, and Chapter 568.
☐ Other: _____.
  $151.00 Pursuant to F.S. 938.085 (Rape Crisis Trust Fund)

## DISCRETIONARY OR SPECIFIC OFFENSE COSTS:
### (Only applicable if indicated)

☒ Restitution in accordance with the attached order. Amount $_____.
☐ $100.00 to FDLE Operating Trust Fund for drug related cases pursuant to F.S. 938.25.
☐ $20.00 to Crimestoppers Trust Fund in addition to any fine assessed pursuant to F.S. 938.06.
☒ Public Defender Fees in the amount of $<u>100.00</u> pursuant to F.S. 938.29.
☒ Unpaid application fee for Public Defender in the amount of $<u>40.00</u> pursuant to F.S. 27.52(1)(d).
☒ Prosecution and Investigation Cost in the amount of $<u>250.00</u> pursuant to F.S. 938.27.
☐ Other costs of prosecution and costs of incarceration pursuant to F.S. 938.27, 960.293(2)(a) & (b) in accordance with the attached order.  Amount $_____.
☐ Up to $150.00 pursuant to F.S. 939.18.
☐ Victimless crime (no restitution order or victim notification sheet are required.)

8

**696**

Defendant: <u>Qinard **Lamar Collins**</u>   Case Number: <u>**CF01-1102**</u>:

It is further ordered that the County of St. Johns State of Florida, and victim(s) shall have and recover from the Defendant the sum of the above amounts, as are applicable to each. This order shall constitute a civil restitution lien to be recorded at no charge in the Public Records of St. Johns County, Florida, and this civil restitution lien shall exist upon any real or personal property of the Defendant. This lien shall bear interest at the legal rate if not paid in accordance with the terms listed below.

DONE AND ORDERED in open court in St. Johns County, Florida, this <u>10th day of October, 2003</u>.

Robert K. Mathis, Circuit Court Judge

Payment of charges, costs and fines is:
☐ A condition of probation: or
☐ Due within _____ days: or
☒ Due immediately FOR WHICH LET EXECUTION ISSUE.

DONE AND ORDERED in open court in St. Johns County, Florida, this <u>10th day of October, 2003</u>.

**Robert K. Mathis, Circuit Court Judge**

FILED AND RECORDED IN
PUBLIC RECORDS OF
ST JOHNS COUNTY FLA

03 OCT 10  PM 10: 04

CHERYL STRICKLAND
CLERK OF COURTS

9

**697**

Defendant: <u>Qinard Lamar Collins</u>   Case Number: <u>CF01-1102</u>:

# STATE OF FLORIDA
# UNIFORM COMMITMENT TO CUSTODY
# OF DEPARTMENT OF CORRECTIONS

The Circuit Court of St Johns County in the  Spring Term, 2003,  in the case of:


## STATE OF FLORIDA

### vs

### Qinard Lamar Collins
Defendant

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA, TO THE SHERIFF OF SAID COUNTY AND THE DEPARTMENT OF CORRECTIONS OF SAID STATE, GREETING:**

The above named defendant having been duly charged with the offense specified herein in the above styled Court, and having been duly convicted and adjudged guilty of and sentenced for said offense by Court, as appears from the attached certified copies of Indictment/Information, Judgment and sentence, and Felony Disposition and Sentence Data form which are hereby made parts hereof:

Now therefore, this is to command you, the Sheriff, to take, keep and within a reasonable time after receiving this commitment, safely deliver the said defendant, together with any pertinent Investigation Report prepared in this case, into custody of Department of Corrections of the State of the Florida: and this is to command you, the said, Department of Corrections, by and through your Secretary, Regional Directors, Superintendents, and other officials, to keep and safely imprison the said defendant for the term of said sentence in the institution in the state correctional system to which you, the said Department of Corrections, may cause the said defendant to be conveyed or thereafter transferred.  And these presents shall be your authority for the same.  Herein fail not.


WITNESS the Honorable Robert K. Mathis,

Judge of Said Court, as also Cheryl Strickland, Clerk,

and the Seal thereof, this the  <u>10th day of October, 2003</u>.

CHERYL STRICKLAND , Clerk of the Circuit Court

By: _____
              Deputy Clerk


**698**

2

Paper No. _____  Case No. _CF01-1102_

# RULE 3.992(a) CRIMINAL PUNISHMENT CODE SCORESHEET

| 1. DATE OF SENTENCE | 2. PREPARER'S NAME WENDT ☑ SAO ☐ DC | 3. COUNTY ST. JOHNS | 4. SENTENCING JUDGE R. MATHIS | |
|---|---|---|---|---|
| 5. DEFENDANT (LAST, FIRST, M.I.I.) COLLINS, QINARD LAMAR | 6. DOB 03/22/1976 | 8. RACE BLACK | 10. PRIMARY OFF. DATE 04/02/2001 | 12. ☑ PLEA |
| | 7. DC # V18204 | 9. GENDER Male | 11. PRIMARY DOCKET # CF01-1102 | ☐ TRIAL |

## I. PRIMARY OFFENSE:

| FELONY DEGREE | F.S.# | DESCRIPTION | OFFENSE LEVEL | POINTS |
|---|---|---|---|---|
| 1 | 782..04(1)(B) | SECOND DEGREE MURDER | 10 | |

(Level - Points: 1=4, 2=10, 3=16, 4=22, 5=28, 6=36, 7=56, 8=74, 9=92, 10=116)

Prior capital felony triples Primary Offense points ☐

**I.  116**

## II. ADDITIONAL OFFENSE(S):

| DOCKET # | FEL/MM DEGREE | F.S.# | OFFENSE LEVEL | QUALIFY | COUNTS | POINTS | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

DESCRIPTION: _____

DESCRIPTION: _____

DESCRIPTION: _____

(Level - Points: M=0.2, 1=0.7, 2=1.2, 3=2.4, 4=3.6, 5=5.4, 6=18, 7=28, 8=37, 9=46, 10=58)

Prior capital felony triples Additional Offense points ☐

**II.  0**

## III. VICTIM INJURY:

| | Number | Total | | | Number | Total |
|---|---|---|---|---|---|---|
| 2nd Degree Murder | 240 X  1 | = 240 | Slight | 4 X | = | 0 |
| Death | 120 X | = 0 | Sex Penetration | 80 X | = | 0 |
| Severe | 40 X | = 0 | Sex Contact | 40 X | = | 0 |
| Moderate | 18 X | = 0 | | | | |

**III.  240**

## IV. PRIOR RECORD:

| FEL/MM DEGREE | F.S.# | OFFENSE LEVEL | QUALIFY | NUMBER | POINTS | TOTAL |
|---|---|---|---|---|---|---|
| M | | M | | 4 | 0.2 | 0.8 |

DESCRIPTION:  DWLSR; NO VALID D/L; LSA PROP DAMAGE; OPEN CONTAINER

DESCRIPTION: _____

DESCRIPTION: _____

(Level - Points: M=0.2, 1=0.5, 2=0.8, 3=1.6, 4=2.4, 5=3.6, 6=9, 7=14, 8=19, 9=23, 10=29)

**IV.  0.8**

**699**

Paper No. 261   Case No. CF01-1102

| | | |
|---|---|---|
| V. | Legal Status Violation = 4 Points | V. _____ |
| VI. | Community Sanction violation before the court for sentencing 6 points x each successive violation OR<br>New felony conviction = 12 points x each successive violation. | VI. _____ |
| VII. | Firearm/Semi-Automatic or Machine Gun = 18 or 25 points | VII. _____ |
| VIII. | Prior Serious Felony = 30 points | VIII. _____ |

**Subtotal Sentence Points**   356.8

**IX. Enhancements (only if the primary offense qualifies for enhancement)**

| Law Enforcement Protection | Drug Trafficking | Grand Theft Motor Vehicle | Street Gang (offenses commited on or after 10-1-98) | Domestic Violence (offenses commited on or after 10-1-98) |
|---|---|---|---|---|
| ☐ x 1.5  ☐ x 2.0  ☐ x 2.5 | ☐ x 1.5 | ☐ x 1.5 | ☐ x 1.5 | ☐ x 1.5 |

Enhanced Subtotal Sentence Points   IX.   0

**TOTAL SENTENCE POINTS**   356.8

## SENTENCE COMPUTATION

If total sentence points are less than or equal to 44, the lowest permissible sentence is any non-state prison sanction.

If total sentence points are greater than 44:

_____356.8_____  minus 28 =  ____329____  x .75 =  _____246.6_____
total sentence points                                          lowest permissible prison
                                                                          sentence in months

The maximum sentence is up to the statutory maximum for the primary and any additional offenses as provided in s.775.082, F.S., unless the lowest permissible sentence under the code, exceeds the statutory maximum. Such sentences may be imposed concurrently or consecutively. If the total sentence points are greater than or equal to 363, a life sentence may be imposed.

_____30_____
maximum
sentence in years

## TOTAL SENTENCE IMPOSED

| | Years | Months | Days |
|---|---|---|---|
| ☑ State Prison   ☐ Life | 30 | _____ | _____ |
| ☐ County Jail   ☐ Time Served | _____ | _____ | _____ |
| ☐ Community Control | _____ | _____ | _____ |
| ☐ Probation | _____ | _____ | _____ |

Please check if sentenced as ☐ habitual offender, ☐ habitual violent offender, ☐ violent career offender, ☐ prison releasee reoffender, or a ☐ mandatory minimum applies.

☐ Mitigated Departure ☐ Plea Bargain

Other Reason _____

**JUDGE'S SIGNATURE**

700

CIR CT
MINUTE 279 PAGE 216

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

STATE OF FLORIDA

VS.

CASE NO.: CF01-1102

QINARD LAMAR COLLINS

Defendant.
_____/

## RESTITUTION ORDER

By appropriate notation, the following provisions apply to the sentence imposed in this section:

____ Restitution is not ordered, as it is not applicable.

____ Restitution is not ordered due to financial resources of the defendant.

____ Restitution is not ordered due to _____

✓ Due to the financial resources of the defendant, restitution of a portion of the damages is ordered as prescribed below.

✓ Jurisdiction is reserved to determine the amount and manner of restitution payment, if any.

____ Restitution is ordered for the following victim.

Name of victim _____   Name of attorney or advocate (if applicable) _____

Address _____

Phone number _____

____ The sum of $_____ for medical and related services and devices related to physical, psychiatric and psychological care, including non-medical care and treatment rendered in accordance with a recognized method of healing.

____ The sum of $_____ for necessary physical and occupational therapy and rehabilitation.

____ The sum of $_____ to reimburse the victim for income lost as a result of the offense.

____ The sum of $_____ for necessary funeral and related services of the offense resulted in bodily injury resulting in the death of the victim.

____ The sum of $_____ for damages resulting from the offense.

____ The sum of $_____ for _____
_____

**IT IS FURTHER ORDERED** that the defendant fulfill restitution obligations in the following manner:

____ Total monetary restitution is determined to be $_____ to be paid at a rate of $_____ per (check one) ☐ month

☐ seek   ☐ other (specify) _____ and is to be paid through the (check one)

☐ Clerk of the Circuit Court,   ☐ the victim's designee, or   ☐ through the Department of Corrections, with an

additional 4% fee of $_____ for handling, processing and forwarding said restitution to the victim's(s).

____ For which sum let execution issue.

**The Defendant must make payment of the debt due and owing to the State under Section 960.17 and 948.03(1)(g), Florida Statutes. The amount of such debt shall not exceed $10,000.00 and shall be determined by the Court at a later date upon final payment by the Crimes compensation Trust Fund on behalf of the victim.**

**DONE AND ORDERED**, at SAINT AUGUSTINE, ST. JOHNS COUNTY, Florida this 11 day of OCTOBER, 2003.

_____
ROBERT K MATHIS, Circuit Court Judge

Original: Clerk of Court
Certified Copy: Victim(s)

FILED AND RECORDED IN
PUBLIC RECORDS OF
ST. JOHNS COUNTY FLA
03 OCT 16 PM 5: 26
CLERK AND
COMPTROLLER OF COURTS

701

Paper No. 262  Case No. CF01-1102

H

CIR. CT.
MINUTE 279   PAGE 355

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO:     CF01-1102
DIVISION:    56B

QINARD LAMAR COLLINS
                    APPELLANT,

vs

STATE OF FLORIDA

_____ APPELLEE.

FILED
2003 OCT 24  PM 4: 11
CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY FL

## NOTICE OF APPEAL

NOTICE IS HEREBY given that Defendant-Appellant appeals to the District Court of

Appeal, Fifth District of Florida, the Order of this Court rendered on October 10, 2003. The

nature of the Order is a final Order adjudicating Defendant guilty of Second Degree Murder,

and a sentence of thirty (30) years in prison.

Respectfully submitted,
JAMES B. GIBSON
PUBLIC DEFENDER

Joseph D. Anthony, III
Assistant Public Defender
St. Johns County Judicial Center
4010 Lewis Speedway, Room 299
St. Augustine, Florida 32084
(904) 824-8623
Florida Bar Number: 0935440

Paper No. 266   Case No. CF01-1102

I

1          IN THE CIRCUIT COURT, SEVENTH
           JUDICIAL CIRCUIT, IN AND FOR
2          ST. JOHNS COUNTY, FLORIDA.

3          CASE NO.:   CF01-1102
           DIVISION:   56B

4

5  THE STATE OF FLORIDA

6  vs.                              FILED 11-24-03

7  QINARD LAMAR COLLINS,            ~~~~ L STRICKLAND
                                    ~~~~ CIRCUIT COURT
8               Defendant.          ~~~ HNS COUNTY
                                    BY: _____
9  STATE OF FLORIDA      )          DEPUTY CLERK

10 COUNTY OF ST. JOHNS )

11 * * * * * * * * * * * * * * * * * * * * * * * *

12   PROCEEDINGS BEFORE THE HONORABLE ROBERT K. MATHIS

13 DATE TAKEN:      August 8, 2003

14 PLACE:          St. Johns County Judicial Center

15                 4010 Lewis Speedway

16                 St. Augustine, Florida  32095

17 REPORTED BY:    Carman L. Gaetanos,

18                 Court Reporter and Notary Public

19

   * * * * * * * * * * * * * * * * * * * * * * * *
20
          ST. JOHNS COUNTY COURT REPORTERS
21   ST. JOHNS COUNTY JUDICIAL CENTER, ROOM 286
          ST. AUGUSTINE, FLORIDA 32095
22              (904) 823-2359

23

24

25

          ST. JOHNS COUNTY COURT REPORTERS

```
 1   APPEARANCES:

 2        MAUREEN SULLIVAN CHRISTINE, ESQUIRE
               and
 3        NOAH MCKINNON, ESQUIRE
               State Attorney's Office
 4             St. Johns County Judicial Center
               4010 Lewis Speedway, Room 252
 5             St. Augustine, Florida 32095
               appearing on behalf of the State.
 6
          JOSEPH D. ANTHONY, III, ESQUIRE
 7             and
          BENNETT FORD, ESQUIRE
 8             Public Defender's Office
               St. Johns County Judicial Center
 9             4010 Lewis Speedway, Room 299
               St. Augustine, Florida 32095
10             appearing on behalf of the Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ST. JOHNS COUNTY COURT REPORTERS

758

```
 1              P R O C E E D I N G S
 2        THE COURT:  All right.  I understand that
 3   there's a resolution in this case.
 4        MR. ANTHONY:  Yes, Your Honor.
 5        THE COURT:  This is Qinard Lamar Collins.
 6   It's Case No. CF01-1102.
 7        MR. ANTHONY:  Would you like us to come
 8   forward?
 9        THE COURT:  If you would, please, because
10   I'm going to have to go through a plea dialogue
11   with him.
12        What resolution have you reached?
13        MR. ANTHONY:  Your Honor, I talked with
14   both Maureen Christine and Noah McKinnon about
15   the case, and the resolution we have reached is
16   that Mr. Collins would enter a plea of no
17   contest to second-degree murder.  That we would
18   agree to a sentencing range of a low of 20
19   years and a high of 30.  That the Court would
20   enter a PSI, as Mr. Collins has no record.
21        THE COURT:  Uh-huh.
22        MR. ANTHONY:  And that we'd get a
23   sentencing date to come back and present
24   information to Your Honor as to what the
25   sentence should be.
```

ST. JOHNS COUNTY COURT REPORTERS

4

1   THE COURT:  Mr. Collins, is that what you

2 want to do?

3   THE DEFENDANT:  Yes, sir.

4   THE COURT:  Would you raise your right

5 hand, please.

6   (Defendant duly sworn.)

7   MR. ANTHONY:  Your Honor, I would just

8 point out for the Court, for the Court's

9 knowledge, there are two counts.  There's one

10 count of aggravated child abuse, as I recall,

11 and the one first-degree murder count.

12   THE COURT:  So he's pleaing to the lesser

13 included of second-degree murder in Count Two.

14   MR. ANTHONY:  Yes, Your Honor.

15   THE COURT:  And that would be 782.1(a)(3);

16 is that correct?

17   MR. ANTHONY:  I don't have my book with

18 me, Your Honor.  I do have some -- I think I

19 have it in the back.

20   THE COURT:  I'm sorry, (1)(a)(2) -- no

21 (1)(b)(2).

22   MR. ANTHONY:  I've got --

23   THE COURT:  That's what it is.  I've got

24 it.

25   MR. ANTHONY:  782.04(2) is -- I'm looking

760

5

1      at the jury instructions, Your Honor.

2           THE COURT:  It would be (1)(b)(2).

3           MR. ANTHONY:  Okay.

4           THE COURT:  Mr. Collins, how old are you?

5           THE DEFENDANT:  I am 27.

6           THE COURT:  Second degree murder is a

7      felony punishable by life imprisonment.  You

8      may be considered for lesser sentencing.  The

9      State and your attorney have announced an

10     agreement to a sentencing range between a 20

11     year minimum and a 30 year maximum with the

12     decision as to the ultimate sentence to be left

13     to me.

14          If your plea is accepted, then when you're

15     sentenced, I must impose against you mandatory

16     court costs of $258, restitution, if there is

17     any, damages for victim injury, if any, an

18     attorney's fee is your attorney's court

19     appointed, and a fine if I decide to impose a

20     fine.

21          You would also be liable for a civil lien

22     for costs of incarceration.

23          How far did you go in school?

24          THE DEFENDANT:  Ninth.

25          THE COURT:  Can you read and write?

ST. JOHNS COUNTY COURT REPORTERS

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  What kind of work do you do?

3    THE DEFENDANT:  Construction.

4    THE COURT:  Are you married?

5    THE DEFENDANT:  No, sir.

6    THE COURT:  Are you a United States

7  citizen?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Have you ever been treated for

10  any mental or emotional disability or do you

11  now suffer from any mental disorder?

12    THE DEFENDANT:  No.

13    THE COURT:  Have you had any alcohol or

14  narcotic drugs in the last 24 hours?

15    THE DEFENDANT:  No, sir.

16    THE COURT:  You have the right to remain

17  silent.  You cannot be compelled to testify

18  against yourself.  Anything that you say about

19  your case can and will be used against you in

20  court.  You have the right to be represented by

21  a lawyer on the charge.  If you don't have the

22  money to hire a lawyer, I'd appoint attorneys

23  from the Public Defender's Office to represent

24  you.

25    You have a right to plead not guilty.  You

7

1    have a right to trial by jury as to your guilt

2    or innocence.  At that trial you have a right

3    to confront, that is to see and hear and ask

4    questions of the witnesses who would testify

5    against you.  You have a right to compel the

6    attendance of witnesses to testify and give

7    evidence in your behalf.

8         If you should elect to plead not guilty,

9    then before you can be convicted, the State

10   would have the burden to prove your guilt

11   beyond every reasonable doubt.

12        By the entry of this plea, you give up

13   those Rights and there'll not be a further

14   trial of any kind.

15        A plea of no contest admits the truth of

16   the charges.  A plea of not guilty would deny

17   the charges.  By your plea, you give up the

18   right to appeal all matters that have been

19   decided in this case so far, including the

20   question of whether or not you committed the

21   crime.  You do not give up the right to appeal

22   an illegal sentence or the circumstances

23   surrounding the entry of the plea.

24        Do you have any questions so far?

25        THE DEFENDANT:  No.


                ST. JOHNS COUNTY COURT REPORTERS

8

1    THE COURT:  Do you believe that your plea

2    of no contest is in your best interest?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  Has anybody used any threats,

5    force, pressure or intimidation to make you

6    plead no contest?

7         THE DEFENDANT:  No, sir.

8         THE COURT:  Other than the plea offer

9    that's been stated on the record, has anybody

10   promised you anything to get you to plead no

11   contest?

12        THE DEFENDANT:  No, sir.

13        THE COURT:  Have you talked to Mr. Anthony

14   about this case?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Are you satisfied with the way

17   he and Mr. Ford and the other attorneys from

18   the Public Defender's Office have represented

19   you?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  What's the State prepared to

22   prove?

23        MRS. CHRISTINE:  Your Honor, the State's

24   prepared to prove that on or about the 2nd day

25   of April, 2001, within St. Johns County,

1   Florida, Qinard Lamar Collins did then and

2   there unlawfully, while engaged in the

3   perpetration or attempted perpetration of the

4   offense of aggravated child abuse, did kill and

5   murder Qinard Collins, Jr., a human being, by

6   hitting him and/or shaking and/or striking said

7   child on or about his head causing abusive head

8   injury.

9       THE COURT:  So for purposes of the plea,

10  the State is willing to reduce this to the

11  unlawful killing of a human being by an act

12  imminently dangerous to another evincing a

13  depraved mind?

14      MRS. CHRISTINE:  Yes, sir.

15      THE COURT:  Any objection to the proffer?

16      MR. ANTHONY:  No, Your Honor.

17      THE COURT:  Mr. Collins, has anybody

18  coached you or told you to testify falsely

19  today because of any promise, agreement or

20  understanding that's not been told to me?

21      THE DEFENDANT:  No, sir.

22      THE COURT:  Do you still want to enter the

23  plea?

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  You have no prior criminal

1 record, no prior felony record?

2   THE DEFENDANT: No, sir.

3   THE COURT: Then I need a Presentence

4 Investigation. Set this for my October

5 sentencing date which I think is the 10th, is

6 it not?

7   THE CLERK: Correct.

8   THE COURT: Mr. Collins, there will be

9 some folks out from the Department of

10 Corrections to talk to you about a Presentence

11 Investigation, and I will see you on

12 October 10th.

13   THE DEFENDANT: Okay.

14   THE COURT: Is the State nol-prosing Count

15 One?

16   MRS. CHRISTINE: Yes, Your Honor.

17   State of Florida announces a nol-pros to

18 Count One, aggravated child abuse.

19 (Whereupon, the proceedings were concluded.)

20

21

22

23

24

25

11

1                    REPORTER'S CERTIFICATE

2          I, Carman L. Gaetanos, Official Court Reporter,

3      certify that I was authorized to and did

4      stenographically report the foregoing proceedings

5      and that the transcript is a true and complete

6      record of my stenographic notes.

7          DATED this 24th day of November, 2003.

8

9                    _____
                     CARMAN L. GAETANOS
10                   Official Court Reporter
                     Seventh Judicial Circuit
11                   Notary Public-State of Florida
                     Commission No. DD222562
12                   Expires:  6/12/2007

13

14

15

16

17

18

19

20

21

22

23

24

25

767

# CERTIFICATE OF CLERK

## STATE OF FLORIDA
## COUNTY OF ST. JOHNS

I, **CHERYL STRICKLAND**, Clerk of the Circuit Court for the County of St. Johns, State of Florida, do hereby certify that the foregoing pages 1 - 767, inclusive contain a correct transcript of the record of the judgment in the case of:

QINARD L. COLLINS,
Appellant,

V.

STATE OF FLORIDA,
Appellee.

5th DCA Case No.: 5D03-3601
L.T. Case No.: CF01-1102

and a true and correct recital and copy of all such papers and proceedings in said cause as appears from the records and files of my office that have been directed to be included in said record by the directions furnished to me. Pages 725-767, inclusive, embrace the transcribed notes of the reporter as made at court proceedings, certified to be by her.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Seal of said Court this 4TH Day of December, A.D. 2003.

CHERYL STRICKLAND
CLERK CIRCUIT COURT

(SEAL)

CIRCUIT COURT,
7th JUDICIAL CIRCUIT,                    By
ST. JOHNS COUNTY, FLORIDA               Deputy Clerk, Appellate Division



1                              IN THE CIRCUIT COURT, SEVENTH
                             JUDICIAL CIRCUIT, IN AND FOR
2                            ST. JOHNS COUNTY, FLORIDA.

3                              CASE NO.:  CF01-1102
                             DIVISION:  56B
4

5    THE STATE OF FLORIDA

6    vs.

7    QINARD LAMAR COLLINS,

8                   Defendant.

9

10   STATE OF FLORIDA      )

11   COUNTY OF ST. JOHNS )

12

13

14   * * * * * * * * * * * * * * * * * * * * * * * * *

15    PROCEEDINGS BEFORE THE HONORABLE ROBERT K. MATHIS

16   DATE TAKEN:           Friday, October 10, 2003

17   PLACE:                St. Johns County Judicial Center
                          4010 Lewis Speedway
18                         St. Augustine, Florida  32095

19   REPORTED BY:          Stacey A. George, RPR-CP
                          Court Reporter and Notary Public
20

     * * * * * * * * * * * * * * * * * * * * * * * * *
21

22

23          ST. JOHNS COUNTY COURT REPORTER
        ST. JOHNS COUNTY JUDICIAL CENTER, ROOM 250
24              ST. AUGUSTINE, FLORIDA 32095
                    (904)  823-2359
25

RECEIVED

DEC 0 8 2003

Office of Attorney General
Daytona Beach, Florida

L03-1-32238          5D03-3601
COLLINS, Qinard L.
v. State of Florida    5th DCA
                      Timothy Wilson



725

2

```
 1   APPEARANCES:

 2        MAUREEN SULLIVAN CHRISTINE, ESQUIRE
               State Attorney's Office
 3             St. Johns County Judicial Center
               4010 Lewis Speedway, Room 252
 4             St. Augustine, Florida 32095
               appearing on behalf of the State.

 5

 6        JOSEPH D. ANTHONY, III, ESQUIRE
          BENNETT FORD, ESQUIRE
               Public Defender's Office
 7             St. Johns County Judicial Center
               4010 Lewis Speedway, Room 299
 8             St. Augustine, Florida 32095
               appearing on behalf of the defendant.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ST. JOHNS COUNTY COURT REPORTERS

1                    P R O C E E D I N G S

2          THE COURT:  Mr. Anthony is here now, I

3     believe.

4          Are you ready on Mr. Collins?

5          MR. ANTHONY:  Your Honor, I've got one

6     witness that has not arrived yet, his

7     grandfather.

8          THE COURT:  Okay.

9          MR. ANTHONY:  Your Honor, I do have two

10    other witnesses I can call.

11         THE COURT:  All right.  Who's your first

12    one?

13         MR. ANTHONY:  Your Honor, my first witness

14    is Kerry Wiley.  Do you want to swear her in?

15         THE COURT:  Would you raise your right

16    hand, please, ma'am.

17         (Whereupon, the witness was duly sworn.)

18         THE COURT:  You may inquire.

19         MR. ANTHONY:  Could you state your name

20    for the record, please.

21         MS. WILEY:  My name is Kerry Wiley.

22         THE COURT:  You're going to have to speak

23    up some.

24         MS. WILEY:  My name is Kerry Wiley.

25         MR. ANTHONY:  And where do you live,

                ST. JOHNS COUNTY COURT REPORTERS

4

1    Ms. Wiley?

2         MS. WILEY:  At 5 North Whitney.

3         MR. ANTHONY:  That is in St. Augustine?

4         MS. WILEY:  Yes.

5         MR. ANTHONY:  And how do you know Qinard

6    Collins?

7         MS. WILEY:  We've been friends for some

8    years.

9         THE COURT:  I can't hear you at all.

10        MS. WILEY:  We've been friends for some

11   years.

12        MR. ANTHONY:  Can you give the judge an

13   estimate as to how long?

14        MS. WILEY:  It's been about ten or eleven

15   years.

16        MR. ANTHONY:  And have you ever done

17   anything socially with Mr. Collins?

18        MS. WILEY:  Yeah, we hang out a lot.

19        MR. ANTHONY:  Okay.  How well would you

20   say you know him?

21        MS. WILEY:  Pretty well.

22        MR. ANTHONY:  Do you know Mr. Collins to

23   be a violent person?

24        MS. WILEY:  No.

25        MR. ANTHONY:  Has he ever done anything

ST. JOHNS COUNTY COURT REPORTERS

1    against you?

2        MS. WILEY:  No.

3        MR. ANTHONY:  Is there anything you

4    would -- anything else you would like to tell

5    the judge specifically about Qinard Collins?

6        MS. WILEY:  Just the fact that we was good

7    friends, I've known him for a long time, and he

8    hasn't done anything to me.

9        MR. ANTHONY:  Would you like to say

10   anything to the judge about sentencing here

11   today?

12       MS. WILEY:  I don't really know what to

13   say on that part right there.  I mean, I can't

14   say I want him to go to prison.  I can't say

15   that.

16       MR. ANTHONY:  I don't have any further

17   questions of Ms. Wiley, Your Honor.

18       THE COURT:  Any questions from the state?

19       MRS. CHRISTINE:  No questions, Your Honor.

20       THE COURT:  Thank you, ma'am.  You may be

21   seated.

22       Your next witness, please.

23       MR. ANTHONY:  Your Honor, the defense

24   would call Dr. Harry Krop.

25       THE COURT:  Dr. Krop.  Would you raise

         ST. JOHNS COUNTY COURT REPORTERS

729

1        your right hand, please.

2    THEREUPON,

3                    DR. HARRY KROP

4    was called as a witness and, after having been first

5    duly sworn, was examined and testified as follows:

6            THE COURT:  Dr. Krop, it would be easier

7        if you come over and take the witness stand,

8        please.

9            You may inquire.

10                   DIRECT EXAMINATION

11   BY MR. ANTHONY:

12       Q    Would you state your name for the record,

13   please.

14       A    Harry Krop.

15       Q    And what is your occupation, sir?

16       A    I'm a licensed clinical psychologist.

17       Q    And how long have you been in that

18   occupation or employed as so?

19       A    About thirty years or so.

20       Q    And just briefly, what is your educational

21   background?

22       A    I have a Ph.D. degree in clinical

23   psychology from the University of Miami and I've

24   been in private practive for about the last 24 years

25   with offices in Gainesville as well as Orange Park.

                ST. JOHNS COUNTY COURT REPORTERS

1    My only other position was working as a staff

2    psychologist at the VA hospital before I went into

3    private practice.

4        Q    And my office contacted you and had you

5    appointed to look into the case of Qinard Collins?

6        A    Yes.

7        Q    And could you give the court an idea of

8    how long you have spent meeting with Mr. Collins and

9    working on his case?

10       A    I first saw him April 18th of 2001.  I've

11   seen Mr. Collins on about four different occasions.

12   I've administered a very extensive battery of

13   psychological tests, including neuropsychological

14   tests, measuring IQ, measuring any evidence of

15   possible brain damage.  I've contacted his

16   grandfather.  We spoken to friends of Mr. Collins.

17   I've reviewed probably 20, 25 depositions in this

18   case, medical records and a lot of other -- school

19   records and other documents which you provided at my

20   request.

21       Q    Can you give the court an idea of

22   Mr. Collins' family background as to how he came to

23   live with his grandfather as opposed to his

24   biological mother?

25       A    Well, he basically never met his father

                ST. JOHNS COUNTY COURT REPORTERS

1    until he was 14 years old.  And according to my

2    interview of him, he actually never even recalled

3    living with his parents; although, his mother lived

4    with the grandfather.

5              It's not real clear as to why his mother

6    did not really -- wasn't responsible for him, but he

7    had been living with his grandparents essentially

8    since he was six months old and he forged a very

9    close relationship with his grandparents.

10             His grandmother died, I believe, when

11   Mr. Collins was about 18 and I know that was very

12   traumatic for him.

13             But in discussing Mr. Collins with his

14   grandfather, he indicated that they were very close,

15   that he was not a significant behavior problem.  The

16   grandfather was disappointed when Mr. Collins quit

17   school at the age of 16.  And basically Mr. Collins

18   left to live on his own at that point in time.  So

19   he's pretty much been on his own since he was 16

20   years old.

21        Q    Do you know how old his biological mother

22   was when she gave birth to Mr. Collins?

23        A    I know she was pretty young and I know she

24   was too young and immature to basically take care of

25   him.  I don't recall specifically how old she was.

ST. JOHNS COUNTY COURT REPORTERS

732

1      Q     Can you tell me what you observed and what

2  you learned meeting with Mr. Collins as to feelings

3  he has about the situation we're before the court on

4  today?

5      A     Sure.  Let me say that I think I can

6  pretty much summarize the evaluation in that

7  actually, unlike a lot of individuals that I've

8  evaluated for first-degree murder, as this case

9  originally was, Mr. Collins really doesn't have any

10  significant psychiatric history.  I did not really

11  see any evidence of any kind of major mental

12  illness.

13         Intellectually he's functioning -- he has

14  an IQ of 85, which is in the 16th percentile of the

15  population, but he has a learning disability.  He

16  had always been in special education classes.  He's

17  had problems reading and so forth.

18         The neuropsych eval was inconsistent with

19  any type of brain damage.  So basically we have an

20  individual who is pretty normal in the sense of his

21  psychological status.

22         On the other hand, after the incident --

23  or since his incarceration, he's been somewhat

24  difficult to talk to only in the sense that he's

25  been so emotionally distraught when he talks about

10

```
 1    his child and the death of his child.  And, of

 2    course, granted his legal situation adds to the

 3    depression.  So he's been pretty clinically

 4    depressed since I started working with him over two

 5    years ago, but I have felt that he's been sincerely

 6    remorseful, very distraught regarding, again, not

 7    only his involvement, but certainly the loss of the

 8    child, whom everybody that I spoke to indicated that

 9    he was very close to the child as well.

10         Q    Would the remorse that you witnessed,

11    would part of that be Mr. Collins crying in front of

12    you in your office?

13         A    That's why I said he's been difficult to

14    interview.  Any time we got to talking about the

15    child, he would break down crying.  I mean, he's

16    obviously a very large man, he was even larger when

17    I first started working with him, and to see this

18    very large individual with tears just, you know,

19    pouring out of his eyes, it seemed to me that this

20    was very sincere.

21              MR. ANTHONY:  Your Honor, I don't have any

22         further questions at this point.

23              THE COURT:  Mrs. Christine, do you have

24         questions for him?

25              MRS. CHRISTINE:  I got a couple.
```

ST. JOHNS COUNTY COURT REPORTERS

734

11

```
 1                     CROSS-EXAMINATION

 2   BY MRS. CHRISTINE:

 3        Q    Dr. Krop, did he discuss the circumstances

 4   of killing his child with you?

 5        A    He has never acknowledged killing the

 6   child.

 7        Q    Did he discuss the circumstances which

 8   resulted in the death of the child with you?

 9        A    He basically told me in terms of what the

10   police reports say, but he has always denied killing

11   the child.

12        Q    So he still denies it?

13        A    As of the last time I spoke to him, yes.

14        Q    But you say he's remorseful too?

15        A    He's remorseful and distraught that the

16   death was -- that the child is dead.  And he

17   indicated that if there was anything that he did to

18   contribute to the child's death, that he was

19   remorseful about that.  But, no, he has not

20   acknowledged any intentional or deliberate act which

21   led to the death of his child.

22        Q    Okay.  So you're saying that he can be

23   remorseful without acknowledging any causation in

24   the death of this child?

25        A    Yes.

               ST. JOHNS COUNTY COURT REPORTERS
```

735

1    Q    Okay.  And did he ever discuss his

2    relationship with you with the child's mother?

3    A    Yes.

4    Q    Did he ever indicate to you that he was

5    physically violent to her?

6    A    He indicated that there were some acts of

7    domestic violence, yes.

8    Q    And did he express any feelings of remorse

9    about the domestic violence he perpetrated on her?

10   A    We didn't get into it a whole lot.  He

11   never blamed the child's mother either for any of

12   the difficulties in their relationship and he

13   certainly did not attribute the death of the child

14   to the mother or anybody else.

15   Q    And my final question, did you administer

16   an MMPI?

17   A    Yes.

18   Q    And did he exhibit or did he score or did

19   you reach any diagnosis, however you want to say it,

20   in terms of any personality disorder?

21   A    No.  Actually, surprisingly, again,

22   compared to other individuals in this situation, his

23   MMPI2 was valid.  He was not defensive.  All of the

24   clinical scales were within normal limits.  There

25   was absolutely no evidence of psychopathology and

ST. JOHNS COUNTY COURT REPORTERS

13

```
 1   particularly no evidence of any social or
 2   psychopathic traits.
 3        Q    Did you have any axis one diagnosis?
 4        A    No.
 5        Q    Axis two?
 6        A    No.
 7        Q    Axis three?
 8        A    Axis three would be medical, so no.
 9        Q    And four?
10        A    And basically there are stressors in the
11   death of his child and his legal plight.
12        Q    So depression?
13        A    Depression, but I felt that his depression
14   was situational.
15             MRS. CHRISTINE:  All right.  I have no
16        further questions, Your Honor.
17             THE COURT:  Anything further?
18             MR. ANTHONY:  No, Your Honor.
19             THE COURT:  Thank you, Dr. Krop.  You may
20        be excused.
21             Your next witness, please.
22             MR. ANTHONY:  Your Honor, is there a
23        Mr. Horace Verdell in the courtroom?  I'd call
24        Horace Verdell to the stand, please.
25             THE COURT:  Okay.
```

ST. JOHNS COUNTY COURT REPORTERS

737

14

1          MR. ANTHONY:  Your Honor, this would be my

2    last witness possibly, other than Mr. Collins

3    himself.

4          THE COURT:  Right up here, sir, if you

5    will.  Would you raise your right hand, please

6    sir.

7          (Whereupon, the witness was duly sworn.)

8          THE COURT:  You may inquire.

9          MR. ANTHONY:  State your name for the

10   record, please, sir.

11         MR. BURDELL:  Horace Verdell.

12         MR. ANTHONY:  And where do you live?

13         MR. BURDELL:  956 Puryear Street, here in

14   St. Augustine.

15         MR. ANTHONY:  And what is your

16   relationship to Mr. Collins?

17         MR. BURDELL:  That's my grandson.

18         MR. ANTHONY:  Okay.  And if you could

19   explain to the court how you came to raise

20   Mr. Collins.

21         MR. BURDELL:  Well, we were living in

22   Bunnell, Florida at the time and my daughter

23   had him and she wanted to go down south.  So

24   she left him with me and my wife when he was

25   about six months and we raised him up until he

ST. JOHNS COUNTY COURT REPORTERS

738

15

1     got grown.

2          MR. ANTHONY:  How old was your daughter

3     when she had Mr. Collins?

4          MR. BURDELL:  I believe she was about 15,

5     I believe it was.

6          MR. ANTHONY:  Okay.  Do you know anything

7     about the biological father and any contact he

8     had with Qinard?

9          MR. BURDELL:  I know him, but I haven't

10    saw him lately.

11         MR. ANTHONY:  Do you know if there was any

12    relationship between Qinard and his biological

13    father?

14         MR. BURDELL:  No.

15         MR. ANTHONY:  Okay.  Was there any

16    particular reason why your daughter gave up

17    Qinard to you?

18         MR. BURDELL:  I don't know.  I guess she

19    just wanting to leave home, I guess.  That's

20    all.

21         MR. ANTHONY:  She went down to Boynton

22    Beach to live?

23         MR. BURDELL:  Yes, she did.

24         MR. ANTHONY:  You have relatives down in

25    Boynton Beach?

          ST. JOHNS COUNTY COURT REPORTERS

16

```
1        MR. BURDELL:  Yeah.

2        MR. ANTHONY:  How was Qinard as a child?

3        MR. BURDELL:  Well, he was no more than a

4   typical young child growing up.  He got along

5   pretty good.  He wasn't no bad boy.  He never

6   got in no serious trouble, but, like I say,

7   boys will be boys and that's what I got, a boy

8   child.

9        MR. ANTHONY:  Do you know of any major

10  legal problems, criminal-wise, that Qinard had

11  growing up?

12       MR. BURDELL:  No.

13       MR. ANTHONY:  If you'd just tell the court

14  about when you took Qinard down to Boynton

15  Beach to visit his biological mother as well as

16  other relatives down there what would happen?

17       MR. BURDELL:  He got along with them

18  pretty good.  Like I say, he knows me and his

19  grandma as mama and daddy.  And we'd take him

20  down there and he got along with them pretty

21  good, but he just didn't want to stay down

22  there because he was used to us.  He went down

23  there a couple of summers and stayed, but I

24  think he stayed about a month, something like

25  that.
```

ST. JOHNS COUNTY COURT REPORTERS

1        MR. ANTHONY:  Would Qinard call you after

2   being down there a week or so and want to come

3   back?

4        MR. BURDELL:  Oh, yeah.  Yes, he did.

5        MR. ANTHONY:  Is there anything in

6   particular you'd like the judge to know about

7   Qinard?

8        MR. BURDELL:  All I know, like I say, he

9   could be -- he got a good personality and he

10   got a good head on him, as far as fixing

11   things, picking around and doing things like

12   that.  And like I say, I don't know no major

13   thing that I would say was wrong with him that

14   would make him mean or nothing.

15        MR. ANTHONY:  Is there anything you'd like

16   to say to the judge here today about

17   sentencing?

18        MR. BURDELL:  Yes, I would.  Like I say, I

19   raised him from a baby and I love him.  And

20   like I say, when you raise a child from a baby

21   and you don't -- you know what I mean, it

22   always sticks with you whether it's your grand

23   or your children.  And I don't know what the

24   sentencing is either, but I would hope and pray

25   that it would be as lenient on him as you

18

```
 1          could.  I don't know what the -- how you would

 2          do it, but, like I said, I loved him and we got

 3          along pretty good and I'm going to miss him

 4          once he has to go over there.  And I just --

 5          like I say, I just turn it over in the hands of

 6          the Lord and let him work it out.

 7               MR. ANTHONY:  Thank you, Mr. Verdell.

 8               THE COURT:  Any questions for him?

 9               MRS. CHRISTINE:  No, Your Honor.

10               THE COURT:  Thank you, Mr. Verdell.  You

11          may have a seat, if you'd like.

12               MRS. CHRISTINE:  Would you please mark

13          this as a composite exhibit.

14               THE COURT:  All right.  Mr. Anthony, who's

15          your next witness?

16               MR. ANTHONY:  Your Honor, Mr. Collins

17          wanted to make a few comments to the court, if

18          he could.

19               THE COURT:  All right.  Mr. Collins.

20               THE DEFENDANT:  Your Honor, I truly don't

21          know if I caused this.  I truly -- I swear I

22          truly don't.  If I did in any way cause this

23          with my son, it was not intentional.  Your

24          Honor, I would never try to intentionally cause

25          the death of a human being.
```

742

1          Your Honor, that day I called 911.  I

2     tried everything in my power to save him.  All

3     I could do was just sit there and watch him

4     stare up at me while I was trying to save him.

5     I did CPR.  I tried everything I could, but

6     there was nothing I could do.  You know, and

7     all I want to say is if I did do this, you know

8     what I'm saying, I didn't mean to.  That's the

9     truth.

10          THE COURT:  Mrs. Christine, any questions

11     for him?

12          MRS. CHRISTINE:  No.

13          THE COURT:  Thank you, Mr. Collins.

14          Any testimony from the state?

15          MRS. CHRISTINE:  Yes, Your Honor.  Judge,

16     we have a stipulated exhibit which consists of

17     the photographs of the baby on the day that he

18     was killed and the inside of the house,

19     specifically the car seat with the plastic

20     around it.  And the mother, Your Honor, would

21     like to address the court.

22          THE COURT:  All right.  Have her come up.

23          Would you raise your right hand, please,

24     ma'am.

25          (Whereupon, the witness was duly sworn.)

          ST. JOHNS COUNTY COURT REPORTERS

```
1            THE COURT:  What's your name, please?

2            MS. CANOVA:  Kerry Lynn Canova.

3            THE COURT:  What would you like to tell

4    me, ma'am?

5            MS. CANOVA:  I would like to ask you to

6    give him the maximum sentence that you can

7    because by looking at those pictures that you

8    have in your hand, you can tell that my son was

9    tortured.  And my son was sick.  My son had to

10   be on machines 12 hours out of the day, both an

11   IV and feeding tube.  There was no reason for

12   him to do anything to my son.  I told him to

13   take everything that he had out on me and not

14   to do anything to my son because my son had

15   already been through too much stuff.

16           I'm scared of him and I really think he

17   will try and do something to me when he gets

18   out of jail.

19           He told me that jail was nothing but a

20   vacation because you got three square meals a

21   day and you had a bed to sleep in.  And he told

22   me if he ever did go to jail because of me and,

23   I'm sorry, but it is in a way because of me,

24   that he would get out and he would kill my

25   family and he would kill me.
```

ST. JOHNS COUNTY COURT REPORTERS

744

21

1    My son, because he had a tube in his -- an

2    IV in his chest, it went to his heart, so the

3    doctors, you know, they told me it's really

4    important, you know, he can't tug on it or

5    whatever because it did go to a main artery in

6    his heart.  Qinard would strap my son in the

7    car seat and -- when the tubes were hooked up

8    to him at night and he taped a washcloth around

9    this hand and then -- so his hands would be

10   together and so my son would not be able to

11   move his hands and not be able to play with the

12   cord.  His hands would be in a washcloth and he

13   wouldn't be able to move his hands and they

14   would be taped to the car seat strap so he

15   couldn't even move his arms up and down or

16   anything else.

17        He also killed a puppy in front of me with

18   a hammer.  He crushed the puppy's skull with a

19   hammer.  The puppy was sitting there in

20   convulsions and he said, "If your boy don't

21   straighten up and start getting healthy and

22   strong, I'll do his ass too."  Excuse my

23   language, but that's what he said.

24        THE COURT:  Mr. Anthony, do you have any

25   questions for her?

ST. JOHNS COUNTY COURT REPORTERS

745

22

1           MR. ANTHONY:  Just a few briefly, Your

2     Honor.

3           As to these threats you just told the

4     judge about, did you ever file any police

5     reports so far as yourself or your family being

6     threatened?

7           MS. CANOVA:  I did -- when I was pregnant,

8     I did go and file an injunction against him.

9           MR. ANTHONY:  That wasn't my question.

10    The threats that you just told the judge about,

11    did you ever file a police report in reference

12    to those threats?

13         MS. CANOVA:  No.

14         MR. ANTHONY:  Okay.  Did you take drugs

15    before your child was born?

16         MRS. CHRISTINE:  Objection; relevance,

17    Your Honor.

18         THE COURT:  The objection is sustained.

19         MR. ANTHONY:  I don't have any further

20    questions, Your Honor.

21         THE COURT:  Anything further?

22         MRS. CHRISTINE:  No, Your Honor.

23         THE COURT:  Thank you.  Any further

24    witnesses from the state?

25         MRS. CHRISTINE:  No, Your Honor.

ST. JOHNS COUNTY COURT REPORTERS

23

1          THE COURT:  Argument that either of you

2     would like to make?

3          MR. ANTHONY:  I do just briefly, Your

4     Honor.

5          MRS. CHRISTINE:  I do.

6          MR. ANTHONY:  Your Honor, this is a -- was

7     a sad situation from the beginning.  I think it

8     is documented in the records that Ms. Canova

9     did take drugs and she ended up having a

10     premature baby that was in very -- had many

11     medical problems for a while.  For the first

12     eight, nine months of the child's life he was

13     in the hospital and had the top ten list of

14     medical problems that he was suffering from.  I

15     think the most of which was short gut disease.

16     He was home probably about three to four weeks

17     and then ended up being dead.

18          I just point out that Mr. Collins was

19     given to his grandparents at six months of age.

20     I guess essentially abandoned by his birth

21     mother.  She was a child having a child at the

22     time.  His birth mother moved to Boynton Beach.

23          We'd ask that the court consider

24     Mr. Collins' lack of a criminal record.  I

25     think the PSI documents that.  Other than being

ST. JOHNS COUNTY COURT REPORTERS

1    here today on this case, the only thing he has

2    is a couple of DWLS's that he's done some

3    county time for and a leaving the scene of an

4    accident, as I recall reading through the PSI.

5        It is pointed out in the discovery, at

6    least I've been provided, that he did attempt

7    to help his son by calling 911 and performing

8    CPR.  And we took the deposition of the 911

9    operator that supported that.

10       And, Your Honor, just as Mr. Collins was

11   trying to, I guess, express to the court, the

12   state did not charge this under a premeditation

13   theory.  They charged it under a felony murder

14   theory.  And I guess that's -- ever since I met

15   with Mr. Collins, that's been his whole -- I

16   guess his whole point, that he did not

17   intentionally set out to cause the demise of

18   his son.  That was not his intent whatsoever.

19       We had two persons here, two young

20   persons, I guess ill-equipped themselves to

21   deal with this very medically damaged child.

22       And, Your Honor, we would just ask for the

23   low end of the range, ask the court to consider

24   that, and reiterate that it was not

25   Mr. Collins' intent to cause the demise of his

ST. JOHNS COUNTY COURT REPORTERS

748

25

1      son at all.

2            THE COURT:  Mrs. Christine.

3            MRS. CHRISTINE:  Your Honor, the state

4      would ask the defendant receive 30 years in the

5      state prison.  There are many, many factors

6      present in this case.  The least is the fact

7      that the baby was his child and he does -- does

8      and did have a duty to protect the child.

9            Mr. Anthony is absolutely right, this baby

10     was born, was in the hospital, got out at the

11     end of February of 2001, went home for seven

12     days, went back into the hospital for some kind

13     of infection, was in the hospital until

14     March 16th.  Between March 16th and April 2nd

15     the baby was killed.

16           When that baby left the hospital on

17     March 16th there wasn't a mark on him, a

18     scratch, nothing at all whatsoever.  During

19     this time period the baby was brutalized.  And

20     according to Dr. Steiner, was -- he said the

21     cause of death -- contributed cause of death

22     was battered child syndrome.  You know what

23     that means, Judge.  That means that the baby

24     had injuries of different healing stages,

25     meaning that the injuries were inflicted at

ST. JOHNS COUNTY COURT REPORTERS

749

1    different times, meaning that these injuries

2    were inflicted constantly on this

3    nine-month-old, medically fragile baby.

4         And I'd like to just read the medical --

5    the cause of death findings from Dr. Steiner's

6    deposition for the record.  And, Judge, you

7    have those pictures before you.

8         "My findings were those of death due to

9    abusive head injury with evidence of multiple

10   abusive injuries over varying periods in time

11   which made a battered child syndrome as a

12   contributed cause of death.  Externally there

13   was bruising to the face and abrasions, two

14   areas of bruising, one on each jaw, consistent

15   with a bite mark pressure."

16        You're going to see pictures there where

17   the defendant bit the baby on the cheek.

18   Dr. Steiner says the baby was also bitten on

19   the back of the elbow.  I don't know why

20   anybody would bite a nine-month-old child,

21   other than to inflict pain, because obviously

22   you can't be doing it in the course of

23   discipline because it's not going to do you any

24   good for a nine-month child.

25        "There was bruising on the gums, on the

ST. JOHNS COUNTY COURT REPORTERS

**750**

1    lips.  There was areas of scabbed abrasions

2    where the skin had been rubbed off about the

3    nose, on the ears.  There was a bite-type

4    bruising area to the right elbow.  There was

5    externally some other scabbed abrasions on the

6    legs and back and there was a linear area of

7    recent bruising over the right or left

8    buttocks" -- left or right -- "consistent with

9    some type of blunt trauma."

10        "Internally the injuries were those of

11   bruising to the underneath of the scalp in at

12   least eight places, all recent-type bruising."

13        Your Honor, I didn't provide you with

14   those photographs.  I felt that Dr. Steiner's

15   statement would be sufficient.

16        "There was massive swelling of the brain

17   and hemorrhage into the membranes covering the

18   brain and also recent hemorrhage in the

19   subdural space over the posterior back of the

20   brain.  There was also external bruising or

21   bleeding into the optic nerve sheath, which are

22   the nerves to his eyes."

23        And he goes on to explain that this baby

24   had been shaken.  The baby had been battered.

25   And he says the bruises in this case -- we have

1    abrasions and bruising both recent, meaning

2    right near the time of death, and older,

3    meaning several days, so that's a battered

4    child.  So this is a baby that the father knew

5    was medically fragile, that was within not even

6    a month, and he beat this child to death,

7    Judge.

8         I think additionally Ms. Canova's

9    testimony about the fact that he would strap a

10    nine-month-old baby into a car seat that you

11    have before you with plastic sheeting on it,

12    tape the child's hands together and tape it to

13    the car seat so he couldn't move -- and I don't

14    believe Ms. Canova testified to this, but I

15    think it's in her deposition, that he would not

16    put a diaper on the child.  So the child would

17    be sitting there in its feces and so forth

18    This is a child with a catheter to its heart.

19         Your Honor, you know, maybe, maybe

20    Mr. Collins didn't intend to kill this baby,

21    but I don't see how he could have done

22    everything that he did to this child and not

23    expect death to result.  Therefore, Judge,

24    we're asking that he receive the maximum

25    sentence of 30 years in state prison.

ST. JOHNS COUNTY COURT REPORTERS

1  THE COURT:  Mr. Anthony, any response?

2  MR. FORD:  Your Honor, could I respond

3  briefly.  We're not here to dispute this, in

4  the main part of it.  What we are disputing is

5  that this was intentional, that he did this

6  with any malice.  And I think that's evidenced

7  by the fact that he did attempt CPR, he did

8  call 911.

9  The fact that the child's hands were taped

10  to the baby seat just, I think, further shows

11  his immaturity and his lack of parenting

12  skills.  He thought that was the way to keep

13  the child from pulling the tubes out that went

14  to his heart.  And a small infant like that

15  will do something like that if you don't

16  control them.  Maybe that wasn't the proper way

17  to do it, but to Mr. Collins, that was the only

18  way he knew how to try to keep the child from

19  pulling tube out.  I don't think that's any

20  evidence of any torture or intentional

21  mistreatment of the child.  In fact, I haven't

22  heard that it was mistreatment of any sort.

23  Maybe you shouldn't tape a child's hands,

24  but when he has a tube going straight to his

25  heart that he could easily pull out and would

ST. JOHNS COUNTY COURT REPORTERS

1    be disastrous, I don't think that's that

2    unusual.

3        And, again, I would ask the court to

4    please consider both his lack of maturity in

5    parenting skillings, the lack of the mother and

6    their inability to deal with this.  And the

7    fact that he did attempt to perform CPR.  He

8    did -- I believe he was doing that at the time

9    the paramedics arrived.  He did call 911.  Had

10   he intended to kill the child, I think he would

11   have just left the child die.  I don't think

12   that was his intention.

13       THE COURT:  Well, Mr. Collins, it may not

14   have been your intention to kill the child.

15   Your actions are certainly that that it caused

16   the child's death.  And the greater shame here

17   is that the mother didn't do anything to

18   protect the child.  She had plenty of

19   opportunity to do something to protect this

20   child, if these injuries took place over a long

21   period of time.

22       But, Mr. Collins, based on the totality of

23   the circumstances in this case, I'm going to

24   have to adjudge you to be guilty of the offense

25   of second-degree murder.  You're committed to

ST. JOHNS COUNTY COURT REPORTERS

754

1       the custody of the Department of Corrections

2       for a term of 30 years.  You'll be given credit

3       for 862 days time served.

4            The mandatory costs of $258, $250 cost of

5       prosecution, $100 public defender's fee and a

6       $40 public defender application fee will be

7       assessed as a civil lien.  They will be due

8       immediately for which let execution issue.

9            It's your right to appeal from the

10      judgment and sentence within 30 days of today's

11      date.  You're entitled to the assistance of

12      counsel in the filing and preparation of your

13      appeal.  Upon your request and upon your

14      showing that you're entitled to a lawyer at the

15      expense of the State, I'll appoint one for you.

16           You need to step over and be

17      fingerprinted.

18           (Whereupon, the proceedings were

19      concluded.)

20

21

22

23

24

25

ST. JOHNS COUNTY COURT REPORTERS

32

COURT CERTIFICATE

STATE OF FLORIDA        )
                        )
COUNTY OF ST. JOHNS )

    I, STACEY A. GEORGE, certify that I was

authorized to and did stenographically report

the foregoing proceedings and that the transcript

is a true and complete record of my stenographic

notes.


    Dated this 4th day of November, 2003.


                    /s/
        _____
                STACEY A. GEORGE, RPR-CP
                and Notary Public.

ST. JOHNS COUNTY COURT REPORTERS

756



WILSON
L03-1-32238

IN THE DISTRICT COURT OF APPEAL, FIFTH DISTRICT OF
THE STATE OF FLORIDA.



QUINARD COLLINS,                )
                               )
          Appellant,           )
                               )
vs.                            )          DCA CASE NO. 5D 03-3601
                               )
STATE OF FLORIDA,              )
                               )
          Appellee.            )
_____        )

APPEAL FROM THE CIRCUIT COURT
IN AND FOR ST. JOHN'S COUNTY, FLORIDA

**INITIAL BRIEF OF APPELLANT**

JAMES B. GIBSON
PUBLIC DEFENDER
SEVENTH JUDICIAL CIRCUIT

ALLISON HAVENS
ASSISTANT PUBLIC DEFENDER
FLORIDA BAR NO.0183725
112 Orange Avenue, Suite A
Daytona Beach, Florida 32114
(386) 252-3367

COUNSEL FOR APPELLANT

L03-1-32238        5D03-3601
COLLINS, Qinard L.
v. State of Florida    5th DCA
                   Timothy Wilson

# **TABLE OF CONTENTS**

|  | PAGE NO. |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF CITATIONS | ii-iii |
| PRELIMINARY STATEMENT | iv |
| STATEMENT OF THE CASE AND FACTS | 1 |
| SUMMARY OF THE ARGUMENT/STANDARD OF REVIEW | 3 |
| ISSUE | 4 |

> WHETHER THE TRIAL COURT ERRED IN
> SENTENCING THE APPELLANT?

| CONCLUSION | 8 |
| CERTIFICATE OF SERVICE | 9 |
| CERTIFICATE OF FONT | 9 |

i

## TABLE OF CITATIONS

CASES CITED:                                                    PAGE NO.

Amendments to Florida Rules of Appellate Procedure
696 So.2d 1103 (Fla. 1996)                                          5

Anders v. California
386 U.S. 738 (1967)                                               3,4

Byrd v. State
419 So. 2d 725 (Fla. 5th DCA 1982)                                  7

Fick v. State
388 So. 2d 1352 (Fla. 5th DCA 1980)                                 7

Graff v. State
389 So. 2d 333 (Fla. 5th DCA 1980)                                  7

State v. Jefferson
758 So. 2d 661 (Fla. 2000)                                          6

Leonard v. State
760 So. 2d 114 (Fla. 2000)                                          6

Maddox v. State
760 So. 2d 80 (Fla. 2000)                                           6

Robinson v. State
373 So.2d 898 (Fla. 1979)                                         5,6

State v. Causey
503 So.2d 321 (Fla.1987)                                          3,4

## OTHER AUTHORITIES CITED:

Fla. Stat. § 775.082(2000)                                    6
Fla. Stat. § 924.06(3)(1977)                                  5
Fla. Stat. § 924.06(3)(1995)                                  5
Fla. Stat. § 924.051(4)(1995)                                 5

Fla. R. App. P. 9.140(b)(2)(B)(ii)(1996)                      7

IN THE DISTRICT COURT OF APPEAL, FIFTH DISTRICT OF
THE STATE OF FLORIDA.

QUINARD COLLINS,       )
                       )
        Appellant,   )
vs.                     )       DCA CASE NO. 5D 03-3601
                       )
STATE OF FLORIDA,     )
                       )
        Appellee.    )
_____)

## PRELIMINARY STATEMENT

Appellant was the Defendant and Appellee was the Prosecution in the Felony Division of the Circuit Court, Seventh Judicial Circuit, in and for St. John's County, Florida.  In the Brief, the Appellee will be referred to as "the State" and the Appellant will be referred to as he appears before this Honorable Court of Appeal.

In the brief the following symbol(s) will be used:

"R" - Original record on appeal, Volumes I-IV.

"P" - Plea transcript, Volume IV.

"S" - Sentencing transcript, Volume IV.

iv

## STATEMENT OF THE CASE AND FACTS

Appellant was charged by indictment in case number 01-1102 with aggravated child abuse, and first degree murder, a capital felony. (R 26, Vol. I) The victim was a prematurely born ten month old who suffered from several medical problems, and required an IV tube which was connected to his heart, and demanded special care. (S 747, Vol. IV) The State alleged that Appellant killed the child by hitting and/or shaking the child on or about his head causing abusive head injury, and the child died from battered child syndrome. (P 765, Vol. IV)(S 749, Vol. IV)

On August 8, 2003, Appellant, with the assistance of counsel, entered a negotiated plea of no contest to the lesser included charge of second degree murder. (S 759, Vol. IV) The State agreed to a sentence between 20 to 30 years and nolle prosequied count one, aggravated child abuse. (S 759, Vol. IV) The court conducted a full plea colloquy to ascertain the knowing and voluntary nature of the plea. (S 760-765, Vol. IV)

Sentencing was held on October 10, 2003. The Appellant argued in mitigation and explained that he never intended to harm the child, but tried to save him by calling 911, and performing CPR. (S 742-743, Vol. IV) Defense witnesses testified as to Appellant's behavior including that Appellant was not a

1

violent person, he was raised by his grandfather due to the immaturity of his mother who gave birth to him at age 15. (S 728, 738, Vol. IV)  Appellant had no previous felonies on his prior record. (R 699, Vol. IV)  Psychologist Harry Krop, testified he found no significant finding of psychological history, but Appellant was remorseful for the death of his child. (S 733, Vol. IV)  The State presented testimony from the mother of the child who testified that Appellant had threatened to kill her if he was sent to prison because of her. (S 744, Vol. IV)

The punishment code scoresheet totaled 356.8 points which allowed for a minimum of 246.6 months in prison. (R 699, Vol. IV)  The court adjudicated the Appellant and sentenced him to 30 years in prison, with 921 days credit for time served. (S 755, Vol. IV)(R 693, 703, Vol. IV)

The Office of the Public Defender was appointed for the purposes of this appeal (R 721, Vol. III), and a timely Notice of Appeal was filed. (R 707, Vol. III)

2

## SUMMARY OF ARGUMENT/STANDARD OF REVIEW

This brief is submitted in partial fulfillment of the requirements of <u>Anders v.</u> <u>California</u>, 386 U.S. 738 (1967).  Pursuant to <u>Anders</u>, an appellate court must examine the record on appeal to the extent necessary to discover any errors apparent on the face of the record.  Should the court in its independent review find it issue to be arguable on the merits, counsel should be directed to file supplemental briefs addressing such issue for the benefit of the court.  <u>State v.</u> <u>Causey</u>, 503 So.2d 321 (Fla.1987).

## ISSUE

### WHETHER THE TRIAL COURT ERRED
### IN SENTENCING THE APPELLANT?

This brief is submitted in partial fulfillment of the requirements of <u>Anders v. California</u>, 386 U.S. 738 (1967). The Court in <u>Anders</u> held that where appointed counsel moves to withdraw on the grounds that he finds the appeal wholly frivolous, the Motion to Withdraw should be accompanied by a "brief referring to anything in the record that might arguably support the appeal." The Court also stated that, "this requirement would not force appointed counsel to brief his case against his client...." <u>Anders</u>, 386 U.S. at 745.

Pursuant to <u>Anders</u>, an appellate court must examine the record on appeal to the extent necessary to discover any errors apparent on the face of the record. Should the court in its independent review find it issue to be arguable on the merits, counsel should be directed to file supplemental briefs addressing such issue for the benefit of the court. <u>State v. Causey</u>, 503 So.2d 321 (Fla.1987).

In the instant case, Appellant entered a no contest plea to second degree murder, a first degree felony. A defendant who enters a plea of guilty or no contest waives the right of direct appeal, unless expressly reserved, of all matters except those arising contemporaneously with the plea itself. Fla. Stat.

4

§924.06(3)(1995); Fla. Stat. §924.051(4)(1995).

Section 924.051(4) provides:

> If a defendant pleads nolo contendere without expressly
> reserving the right to appeal a legally dispositive issue,
> or if a defendant pleads guilty without expressly
> reserving the right to appeal a legally dispositive issue,
> the defendant may not appeal the judgment or sentence.

*See also* Fla. Stat. §924.06(3)(1995). The Florida Supreme Court has interpreted

this language to permit appellate review of the limited class of issues permitted

under <u>Robinson v. State,</u> 373 So.2d 898 (Fla. 1979). Fla. R. App. P.

9.140(b)(2)(1996); <u>Amendments to Florida Rules of Appellate Procedure,</u> 696

So.2d 1103, 1105 (Fla. 1996).

In <u>Robinson v. State</u>, 373 So. 2d 898 (Fla. 1979), the court upheld the

constitutionality as applied of Section 924.06(3), Florida Statutes (1977),

precluding a direct appeal from a guilty plea or no contest plea with no express

reservation of the right to appeal, and noted that although a guilty plea "forecloses

appeal from matters which took place before defendant agreed to a judgment of

conviction," there is still a "right of appeal from conduct that would invalidate the

plea itself." <u>Robinson</u> at 902. The <u>Robinson</u> court delineated the issues which an

appellate court may address in the guilty plea appeal:

(1) The subject matter jurisdiction,

5

(2) the illegality of the sentence,

(3) the failure of the government to abide by the plea agreement, and

(4) the voluntary and intelligent character of the plea.

Robinson at 902.

Robinson has been reviewed and approved in the recent cases of Leonard v. State, 760 So. 2d 114 (Fla. 2000), and State v. Jefferson, 758 So. 2d 661 (Fla. 2000), which hold that summary affirmance, rather than dismissal for lack of jurisdiction, is the appropriate action where an appeal lacks reserved issues, preserved error, or certain unpreserved fundamental errors under Maddox v. State, 760 So. 2d 80 (Fla. 2000).

In the instant case, the Appellant's sentence was legal. The Appellant entered a plea to a first degree felony, punishable by up to a statutory maximum of thirty years incarceration. See Fla. Stat.§ 775.082(2000). The circuit court sentenced the Appellant to 30 years of incarceration, with credit for 921 days for time served. (S 755, Vol. IV)

Additionally, regarding subject matter jurisdiction, all of the proceedings in the instant case, which involved a felony charge, occurred before the circuit court in St. John's County.

6

Furthermore, there is no issue that may be raised on appeal regarding the voluntariness of the plea. In <u>Byrd v. State</u>, 419 So. 2d 725 (Fla. 5th DCA 1982), this Honorable Court held that it had no jurisdiction to review the issue of the voluntariness of a plea absent a motion to withdraw the plea. No motion to withdraw the plea appears on the record in the instant case. <u>See</u> <u>also</u>, <u>Graff v. State</u>, 389 So. 2d 333 (Fla. 5th DCA 1980); <u>Fick v. State</u>, 388 So. 2d 1352 (Fla. 5th DCA 1980); Fla. R. App. P. 9.140(b)(2)(B)(ii).

7

## CONCLUSION

For the above-stated reasons, the undersigned counsel requests permission to withdraw as counsel for Appellant. Further, counsel requests this Court to allow Appellant, on his own behalf or through other counsel, sufficient time to submit a brief on points he may deem appropriate.

If this Court finds reversible error in this appeal, counsel requests this application to be withdrawn, and an opportunity be granted to file another brief for Appellant.

Respectfully submitted,

JAMES B. GIBSON
PUBLIC DEFENDER
SEVENTH JUDICIAL CIRCUIT

ALLISON HAVENS
ASSISTANT PUBLIC DEFENDER
FLORIDA BAR NO. 0183725
112 Orange Avenue, Suite A
Daytona Beach, Florida 32114
(386) 252-3367

COUNSEL FOR APPELLANT

8

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served upon the

Honorable Charles J. Crist., Jr., Attorney General, 444 Seabreeze Blvd., Fifth

Floor, Daytona Beach, FL 32118, via his basket at the Fifth District Court of

Appeal and mailed to: Quinard Collins, DOC# V18204, Walton Correctional

Institution, 691 World War II Veterans Lane, DeFuniak Springs, Florida  32433

on this 7$^{th}$ day of January, 2004.

ALLISON HAVENS
ASSISTANT PUBLIC DEFENDER


## CERTIFICATE OF FONT

I HEREBY certify that the size and style of type used in this document is

proportionally spaced 14 pt. Times New Roman.

ALLISON HAVENS
ASSISTANT PUBLIC DEFENDER

9

L

V)

WILSON
L03-1-32238
AR

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT                                      JANUARY TERM 2004

NOT FINAL UNTIL THE TIME EXPIRES
TO FILE REHEARING MOTION, AND,
IF FILED, DISPOSED OF.

QINARD L. COLLINS,

      Appellant,

v.                                                   CASE NO.   5D03-3601

STATE OF FLORIDA,                                    L. Ct. #: CF01-1102

      Appellee.

_____/

Opinion filed   April 27, 2004

Appeal from the Circuit Court
for St. Johns County,
Robert K. Mathis, Judge.

James B. Gibson, Public Defender, and
Allison Havens Assistant Public Defender,
Daytona Beach, for Appellant.

Charles J. Crist, Jr., Attorney General,
Tallahassee, and Timothy D. Wilson, Assistant
Attorney General, Daytona Beach, for Appellee.

PER CURIAM.

      AFFIRMED.  *See State v. Causey*, 503 So. 2d 321 (Fla. 1987).

SHARP, W., PETERSON and GRIFFIN, JJ., concur.

RECEIVED
2004 APR 27 AM 8: 55
OFFICE OF
THE ATTORNEY GENERAL
DAYTONA BEACH, FLORIDA

4-29-04
mp

M

QINARD L. COLLINS,

v.

STATE OF FLORIDA

5D03-3601 St. Johns

CF01-1102

WILSON L03-1-32238

Mandate was forwarded to trial court today.

Clerk, Fifth District Court
of Appeal, Daytona Beach

MAY 14 2004

RECEIVED

2007 MAY 14   AM 8: 27

THE CLERK 5th DCA
DISTRICT COURT OF APPEAL

Ag

DISTRICT COURT OF APPEAL
FIFTH DISTRICT
300 SOUTH BEACH STREET
DAYTONA BEACH, FLORIDA 32114-5097



Provided to Walton CI

On __4-27-0__ for Mailing
Date

Inmate's Initials __QC__

STATE OF FLORIDA,
Plaintiff,

v.

QIUARD L. COLLINS
Defendant,

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT
IN AND FOR St JOHNS
COUNTY, FLORIDA

Criminal Division

Case No.: CF01-1102
(the original case number)

MOTION FOR POST CONVICTION RELIEF

INSTRUCTIONS: READ CAREFULLY

(1)  This motion must be legibly handwritten or typewritten,
signed by the defendant, and contain either the first or second
oath set out at the end of this rule. Any false statement of a
material fact may serve as the basis for prosecution and
conviction for perjury. All questions must be answered concisely
in the proper space on the form.

(2)  Additional pages are not permitted except with respect to
the facts that you rely upon to support your grounds for relief.
No citation of authorities need be furnished. If briefs or
arguments are submitted in support of your legal claims (as
opposed to your factual claims), they should be submitted in the
form of a separate memorandum of law. This memorandum should have
the same caption as this motion.

(3)  No filing fee is required when submitting a motion for
Post/Conviction Relief.

(4)  Only the judgment of one case may be challenged in a single
motion for postconviction relief. If you seek to challenge

judgments entered in different cases, or different courts, you must file separate motions as to each such case. The single exception to this is if you are challenging the judgments in the different cases that were consolidated for trial. In this event, show each case number involved in the caption.

(5)   Your attention is directed to the fact that you must include all grounds for relief, and all facts that support such grounds, in the motion you file seeking relief from any judgment of conviction.

(6)   When the motion is fully completed, the original must be mailed to the clerk of the court whose address is;

_____

_____

_____

## MOTION

1.   Name and location of the court which entered the judgment of conviction under attack: SEVENTH JUDICIAL CIRCUIT IN AND FOR St JOHNS COUNTY, FLORIDA

2.   Date of judgment of conviction: OCTOBER 10, 2003

3.   Length of sentence: THIRTY (30) YEARS STATE PRISON

4.   Nature of offense(s) involved (all counts): _____

SECOND DEGREE MURDER

_____

_____

5.   What was your plea? (check only one)

(a) Not Guilty _____
(b) Guilty _____
(c) Nolo Contendere  X
(d) Not guilty by reason of insanity _____

If you entered one plea to one count, and a different plea to another count, give details: N/A _____

_____

1.

6.   Kind of trial: (check only one)

     (a) Jury _____
     (b) Judge only without jury _____

7.   Did you testify at the trial or at any pre-trial hearing?

     Yes _____ No _____

     If yes, list each such occasion: _____

     _____

8.   Did you appeal from the judgment of conviction?

     Yes _X_ No _____

9.   If you did appeal, answer the following:

     (a)  Name of court: FIFTH DISTRICT OF APPEALS, FLORIDA

     (b)  Result: AFFIRMED CASE NO: 5D03-3601

     (c)  Date of result: MAY 14, 2004

     (d)  Citation (if known): UK

10.  Other than a direct appeal from the judgment of
conviction and sentence, have you previously filed any
petitions, applications, motions, etc. with respect to this
judgment in this court?  Yes _____ No _X_

11.  If your answer to number 10 was "yes", give the following
information (applies only to proceedings in this court):

     (a)  (1) Nature of the proceeding: _____

     _____

     _____

          (2) Grounds raised: _____

     _____

     _____

                      2.