IN THE CIRCUIT COURT OF THE *SEVENTH* JUDICIAL CIRCUIT IN
AND FOR *ST. JOHNS* COUNTY, FLORIDA

STATE OF FLORIDA,
      PLAINTIFF,

VS.
                                  CASE NO.: *CF01-1102*

*QINARD L. COLLINS ,*
      DEFENDANT,

## MOTION TO HEAR AND RULE

Comes now, the defendant *Qinard L. Collins ,* pro se, pursuant to *Florida Rules of Criminal Procedure and or Judicial Administration, Rule 2.215(f),* moves this Honorable Court to enter a ruling on Defendant's Motion, presently pending before this Honorable Court and as ground would show:

## PROCEDURAL HISTORY

1). Defendant/Appellant filed his *Post-Conviction Relief 3.850* on the *5th* day of *January* , 20*11*.

2). *As of this filing motion still pending*

3). _____

## ARGUMENT

*Florida Rules of Judicial Administration 2.215(f) (2007)* indicates that every Judge has a ministerial duty to rule upon and announce his/her order of Judgment on every matter submitted to him/her within a reasonable time. The applicability of presumption may falter when a trial Court and/or appellate court takes an unusually long time to hear a case. See *Peterson vs. Murrah, 622 So.2d 1167 (Fla. 5th DCA 1993).*

The entry of an post conviction proceeding is a Ministerial duty which should be performed within a reasonable time. *Moore vs. Kaplin, 640 So.2d 199 (Fla. 4th DCA 1994); Kramp vs. Fagan, 568 So.2d 479 (Fla. 1st DCA 1990); Francois vs. Klein, 431 So.2d 165 (Fla. 1993).*

PROPOSED for
HOLMES CI ON

OCT 3 1 2011

FOR MAILING

FILED 2011 NOV -2 P 1: 30
CHERYL STRICKLAND
CLEPK OF CIRCUIT COURT
ST JOHNS COUNTY

WHEREFORE, the Defendant/Appellant, in the interest to justice and due process, respectfully request this Honorable Court to enter a ruling on Defendant's/Appellant's motion which is pending in this court.

Under the Penalties of Perjury, I swear or affirm that I have read the foregoing Motion and the facts stated in it are true.

Executed on this __15st__ day of __November__ , 20_11_.

_Dinard L. Collins_

Defendant *pro se*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that a true and correct copy of the Motion to Rule and Hear has been furnished to the Office of the State Attorney located at __4010 Lewis Speedway, RM.232 St. Augustine, FLA. 32084__ , , by placing the same in the U.S. mail on this __1st__ day of __November__ 20_11_ .

Respectfully Submitted

/S/ _Dinard L. Collins_

DC # __V18204__ Bunk __H3101L__

Holmes Correctional Institution

3142 Thomas Drive

Bonifay, Florida 32425

BB

**FILED**

2012 JAN -6 P 3: 35

CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO.: CF01-1102
DIVISION: 56

STATE OF FLORIDA,

vs.

QINARD L. COLLINS,
        Defendant.

_____/

## ORDER ON MOTION FOR POSTCONVICTION RELIEF

THIS CAUSE came before the Court on Defendant's Motion for Postconviction Relief,
filed pursuant to Rule 3.850, Florida Rules of Criminal Procedure on January 7, 2011. The Court
has reviewed and considered the Motion, and being otherwise fully advised in the premises finds
as follows:

On August 8, 2003, Defendant pled no contest to second degree murder. On October 10,
2003, Defendant was sentenced to serve thirty years in prison. Defendant's Judgment and
Sentence was affirmed on appeal. Mandate issued May 14, 2004. In May 2006, Defendant filed
a motion for postconviction relief claiming newly discovered evidence. He claimed he
discovered medical journals and/or documentaries about adverse vaccine reactions causing
death, and that he was unaware of this defense prior to entering his plea. He also claimed that
his attorney was ineffective for failing to investigate that defense. That motion was denied and
affirmed on appeal.

In his present motion, Defendant raises one claim of ineffective assistance of counsel and
also claims that newly discovered evidence exists that proves a plethora of his state and federal
due process rights were violated and that his freestanding actual innocence rights were violated.

A Motion filed pursuant to Rule 3.850 must be filed within two years of the judgment and sentence becoming final unless the defendant alleges that: (1) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, (2) the fundamental constitutional right asserted was not established within the two-year time limit provided and has been held to apply retroactively, or (3) the Defendant retained counsel to timely file a 3.850 motion and counsel, through neglect, failed to file the motion. Fla. R. Crim. P. 3.850(b). Defendant's judgment and sentence in this case became final on May 14, 2004. Defendant has failed to allege that the medical records he received in May 2009 could not have been ascertained, by the exercise of due diligence, prior to that time. Therefore, Defendant's motion is untimely and will be dismissed.

Even if Defendant's motion was timely, to obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: (1) the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence, and (2) the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. Wainwright v. State, 2 So.3d 948 (Fla. 2009). Defendant admits that his trial counsel knew about the medical records at the time he entered his plea and his whole ineffective assistance of counsel claim is based on counsel's failure to investigate the medical and biomechanical aspects of the State's allegations. Defendant admits that studies relevant to the medical and biomechanical aspects of the case existed at the time he entered his plea. Therefore, Defendant's attorney could have known of such studies by the use of diligence, and Defendant would not be entitled to a new trial on the basis of newly discovered evidence.

Accordingly, it is:

**ORDERED AND ADJUDGED:**

1.      Defendant's Motion for Postconviction Relief is DISMISSED as untimely.

2.      The Defendant has the right to appeal within thirty (30) days of the rendition of this Order.

**DONE AND ORDERED** in Chambers, in St. Johns County, St. Augustine, Florida, this _6_ day of January, 2012.

> WENDY W. BERGER
> Circuit Court Judge

Copies to: 1/6/12
Qinard Collins, DC# V18204
Holmes Correctional Institution
3142 Thomas Drive
Bonifay, Florida 32425-0190

Office of the State Attorney



IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA.

PROVIDED TO
HOLMES CI ON

FEB 1 0 2012

FOR MAILING

CASE NO. CF01-1102
DIVISION: 56

STATE OF FLORIDA

V.

QINARD L. COLLINS
_____Defendant_____

CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY

2012 FEB 13 P 2: 21

FILED

## MOTION FOR REHEARING

COMES NOW, the Defendant Qinard Collins, pro se pursuant to Fla. App. Pro. Rule 9.330 moves this honorable Court to reconsider the decision Render in the Order January 6, 2012 in the Above styled cause, as the court may have overlooked particular fact and/or misapprehended the application of law.

1. This court has overlooked the fact defendant presented newly discovered evidence when the defendant received pathologic report from Dr. Stephens, was issued on 9-27-10 making the motion timely. Dr. Stephens determined that the 2001 misdiagnoses was specially caused by the M.E.s failure to complete the autopsy: "The autopsy is sketchy and inadequate ... no ... full body x-ray ... no ... photographs ... no ... histologic (microscopic) examination... would have been challenged had the case gone to trial...

1

A definitive test for vitamin K... was not done" and that this partial 2001 autopsy caused "a tragic miscarriage of justice. The finding by Dr. Stephens reveal new evidence of the autopsy misdiagnosed is of itself newly discovered in 2010.

2. This court has overlooked the defendant presented newly discovered evidence that in 2006 the National Association of Medical Examiners which Dr. Steiner is a member decline to renew their endorsement of SBS.

3. This court has overlooked the fact the new study defendant present that didn't exist during the time he plea: the follow are just a few new science:
"2004 Plunkett/Goldsmith teamed leading forenic pathologist with a leading biomechanician to once again conduct a biomechanical analysis of all the science to see if any support could be found for the debunked SBS hypothesis. In this paper (PCR Exh. B6) the author concluded that SBS was formulated as a hypothesis only because Dr. Caffey misunderstood Ommay's 1966 experimental data, and if not for this misinterpretation, the hypothesis would not have been published. (id. 92) They concluded that SBS was not a valid hypothesis and that any infant who was violently shaken with 7-10 gs of force under the postulated SBS model would suffer lethal neck injuries, none of which had been reported in the literature"

"2004 Plunkett/Geddes was another joint paper that combined Dr. Plunkett's Forensic pathologist expertise with the expertise of Dr. Geddes, one of the world's leading neurologist. In this paper (PCR Exh. B7), SBS was

Assessed under EBM protocol and found to be lacking. Accordingly, the prestigious authors called upon the international medical community (Dr. Geddes was based in England) to re-examine their SBS diagnosis. Their paper was endorsed by 41 experts who publish their approval. This paper caused the English Judicial System to Sua Sponte review numerous SBS convictions and grant relief where warranted."

"2005 Bandak (PCR Exh. B9) was perhaps the most significant published to date. Dr. Faris Bandak, Ph.D is arguably the nation's most qualified injury-biomechanician and was the director of the United States National Highway Traffic Safety Administration's Accident Reconstruction Division. He is also the Professor of Engineering and Applied Science for the George Washington University. Dr. Bandak followed up on the Dr. Goldsmith 2004 finding that all case of hypothetical SBS would necessarily have lethal neck/brain stem injuries. Conducting an in-depth biomechanical analysis of SBS with special emphasis on the injury thresholds of the infant neck. Dr. Bandak concluded that human shaking could not cause lethal brain injuries in an infant, but that violent shaking would cause structural and lethal neck failure, something that had been unreported in the literature. Put another way, you could not violently shake an infant without causing these injuries due to the inherent weakness of the infant neck. No such injuries exist in this case."

"2005 Leestma (PCR Exh. B8) was another scientific methology review of all the SBS opinion paper from 1969-2001 and once again, Dr. Leestma found the literature was not scientifically sound and could not be used to support a SBS diagnosis. He conclude that: "until there is sufficient

3

scientifically rigorous support for a causal hypothesis, and until all attempts at falsification of it have failed, the hypothesis must be regarded as unproven." (PCR Exh. B8) For these reasons he rejected SBS."

"From the Forensic Pathologist's Textbook, (PCR Exh. B19) photographs #5.19, 5.20, 5.21). Like ballistic evidence, bruise-causation allegations or evidence must be "matched" to the injury causation-object to be scientifically valid, as noted by a 2005 study accord:

   "With the exception of a bruise that carries the clear imprint of the implement used or multiple bruises of uniform shape, the are few bruising patterns that reach diagnostic significance.... In the court setting, opinion must be solidly based on evidence available." (Marquise, Mann, et, Are there patterns of bruising in childhood which are diagnostic or suggestive of abuse? Arch Dis Child 2005 90: 182-186."

"2005 Wolfson way yet another biomechanical test of the hypothesis that validated the 1987 Duhaime results. Replicating Duhaime, Wolfson and his shakers obtained similar results and could only generate about 1/10th of the force needed for brain injuries." As with previous research.... unable to show that shaking alone can cause the head accelerations necessary to cause brain injuries associated with SBS." (Wolfson et at, Ridged body modeling of shaken baby syndrome, Proc Inst Mech Engineering, 2005; 219 (1): 63-70 at page 68.)"
As a note, Wolfson validated an earlier finding by 2003 Cory, supra. In both 2003/2005 tests the human shakers could not violently shake the infant model beyond an average of ten (10) seconds, which greatly disturbed Dr. Cory since the "opinion literatur" postulated a 60-180 second shaking episode, which was shown to be beyond human capabilities.

4

" In 2006 Dr. Uscinski, a neurosurgeon with the profound Potomac Institute (Medical policy think tank), published his paper and it's EBM Review of the science papers that debunked SBS (PCR Exh. B10) Dr. Uscinski concluded that SBS was no longer a valid diagnosis!"

" 2007 Prange (PCR Exh. B11) was a govt. funded crash dummy test that generated data which invalidate a 2003 Cory suggestion. Cory had postulated that perhaps when a child was shaken the chin impacted against the chest, and that this protected the neck from injury. However, the data from 2007 Prange proved that structural neck damage took place during the arcing motion of the head before chin-chest impact took place. Thus, this new 2003 hypothesis was rejected after being tested and falsified.

4. This court has clearly overlooked that a plethora of the defendants State/Federal Due Process rights were violated, in light of his Newly discovered evidence. It is clear that his "Freestanding" actual inncence rights were violated as well.

## CONCLUSION

Wherefore this honorable court should grant said rehearing and revisit said proceeding granting P.C.R. 3.850

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion For Rehearing has been placed in the hand of Holmes C.I prison officials for mailing to: <u>The Clerk of Courts, Cheryl Strickland</u> <u>4010 Lewis Speedway, St, Augustine, Florida 32084</u> _____ via U.S. Mail on this 10 day of February 2012.

/s/ Qinard Collins

Qinard L. Collins # V18204

Holmes Correctional Institution

3142 Thomas Drive

Bonifay, Fla. 32425

## OATH

Under THE PENALTIES OF PERJURY, I declare that I have read the forgoing motion and that the facts stated in it are true

/s/ Qinard Collins

Qinard L. Collins #V18204

Holmes Correction Institution

3142 Thomas Drive

Bonifay, Fla. 32425

**DD**

IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO.: CF01-1102
DIVISION: 56

STATE OF FLORIDA,

vs.

QINARD L. COLLINS,
      Defendant.
_____/

## ORDER ON MOTION FOR REHEARING

THIS CAUSE came before the Court on Defendant's Motion for Rehearing of the Order

denying his Motion for Postconviction Relief rendered January 6, 2012. The Court has reviewed

and considered the Motion and finds that the Motion makes no new argument or reference to any

overlooked fact which would cause this Court to reconsider its previous determination.

Accordingly, it is:

**ORDERED AND ADJUDGED** that:

Defendant's Motion for Rehearing is DENIED.

**DONE AND ORDERED** in Chambers, in St. Johns County, St. Augustine, Florida, this

11 day of July, 2012.

                                       **WENDY W. BERGER**
                                       Circuit Court Judge

Copies to: 7/11/12 m
Office of the State Attorney

Qinard Collins, DC# V18204
Holmes Correctional Institution
3142 Thomas Drive
Bonifay, Florida 32425-0190

FILED

2012 JUL 11 P 2:10

CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY

EE

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN
AND FOR ST. JOHNS COUNTY,
FLORIDA

CASE NO.: CF01-1102

STATE OF FLORIDA,
          Plaintiff,

vs.

QINARD COLLINS,
          Defendant.

_____/

### NOTICE OF APPEAL

      COMES NOW, Defendant, QINARD COLLINS, Pro Se, and files this Notice of

Appeal to the Fifth District Court of Appeal from a dismissal of a Postconviction Motion

under Rule 3.850, Fla.R.Crim.P per an Order Dismissing Motion for Postconviction

Relief dated January 6, 2012 and an Order denying Motion for Rehearing dated July 11,

2012, by the Hon. Wendy W. Berger, Circuit Judge. Defendant is appealing the

disposition of all issues raised in his Postconviction Motion and Motion for Rehearing.

### CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing has been
furnished via U.S Mail postage pre-paid and facsimile to the Office of the State Attorney,
4010 Lewis Speedway, St. Augustine, FL 32804, on this _8th_ day of August, 2012

                              By _Qinard Collins_
                              QINARD COLLINS, Pro Se
                              DC# V18204
                              3142 Thomas Dr.
                              Bonifay FL 32425

FILED
2012 AUG -9 P 3:38
CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY

FILED
2012 AUG -9 P 2:24
CHERYL STRICKLAND
CLERK OF CIRCUIT COURT
ST JOHNS COUNTY

# FF

IN THE

DISTRICT COURT OF APPEAL

FIFTH APPELLATE DISTRICT OF FLORIDA

QINARD L. COLLINS,

     Appellant

v.

STATE OF FLORIDA,

     Appellee.

Case No. 5D12-3200

ON THE APPEAL FROM THE CIRCUIT COURT,
SEVENTH JUDICIAL CIRCUIT, IN AND FOR
ST. JOHN'S COUNTY, FLORIDA

**INITIAL BRIEF OF THE APPELLANT**

Respectfully submitted,

Mary Elizabeth Fitzgibbons, Esquire
Fitzgibbons Law P.A.
Florida Bar No.: 0056480
21 S. Clyde Ave. #3
Kissimmee, Florida 34741
TEL.: (407) 343-1777
FAX: (407) 343-1677

COUNSEL FOR APPELLANT

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................. 3

PRELIMINARY STATEMENT ............................................ 6

STATEMENT OF CASE AND FACTS............................... 6

SUMMARY OF ARGUMENT......................................... 10

ARGUMENT.................................................................. 11

ISSUE ONE:

    THE TRIAL COURT ERRED IN SUMMARILY
DISMISSING APPELLANT'S RULE 3.850 MOTION
FOR POST-CONVICTION RELIEF......................... 11

ISSUE TWO:

    THE TRIAL COURT ERRED IN DENYING
APPELLANT'S MOTION FOR REHEARING............. 23

CONCLUSION.............................................................. 25

CERTIFICATE OF SERVICE........................................ 26

CERTIFICATE OF E-FILING ....................................... 26

CERTIFICATE OF COMPLIANCE................................ 27

# TABLE OF AUTHORITIES

**CASE**                                                        **PAGE**

<u>Arbalaez v. State</u>. 775 So.2d 909 (Fla. 2000)                14

<u>Bracero v. State</u>, No. 2D11-4967, 2012 WL 2402586
    (Fla. 2d DCA June 27, 2012)                            12, 15

<u>Bousley v. U.S.</u>, 523 U.S. 614 (1998)                       13

<u>Boykin v. Alabama</u>, 395 U.S. 238 (1969)                     13

<u>Brady v. U.S.</u>, 397 U.S. 742 (1970)                         19

<u>Connor v. State</u>, 803 So.2d 598 (Fla. 2001)                 23

<u>Foster v. State</u>, 810 So.2d 910 (Fla. 2002)                 11

<u>Franqui v. State</u>, 59 So.3d 82 (Fla. 2011)                  11

<u>Goforth v. State</u>, 15 So.3d 786 (Fla. 5th DCA 2009)       11

<u>Grosvenor v. State</u>, 874 So.2d 1176 (Fla. 2004)             21

<u>Herrera v. Collins</u>, 506 U.S. 390 (1993)                    22

<u>Hill v. Lockhart</u>, 474 U.S. 52 (1985)                       19

<u>House v. Bell</u>, 547 U.S. 518 (2006)                         22

<u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)                   13

<u>Jones v. State</u>, 591 So.2d 911 (Fla. 1991)                  14, 18

<u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976)                   13, 15

<u>McLin v. State</u>, 827 So.2d 948 (Fla. 2002)                  11

Medina v. California, 505 U.S. 437 (1992)                          13, 15

Moore v. State, 870 So.2d 74 (Fla. 2d DCA 2003)                   12

Napue v. Illinois, 360 U.S. 264 (1959)                           13, 14

North Carolina v. Alford, 400 U.S. 25 (1970)                     19

Peede v. State, 748 So.2d 253 (Fla. 1999)                        11

Robinson v. State, 373 So.3d 898 (Fla. 1979)                     13

Schulp v. Delo, 513 U.S. 298 (1995)                              22

Smith v. Mitchell, 437 F.3d 884 (9th Cir. 2006)               13

Spera v. State, 971 So.2d 754 (Fla. 2007)                    18, 20, 22, 23

State v. Pasko, 815 So.2d 680 (Fla. 2d DCA 2002)                 11

Strickland v. Washington, 466 U.S. 668 (1984)                   20

Wiggins v. Smith, 539 U.S. 510 (2003)                           19

Williams v. State, 316 So.2d 267 (Fla. 1975)                    20

## OTHER AUTHORITIES

U.S. Const. Amend. 5                                         13, 18, 20, 21

U.S. Const. Amend. 6                                             18, 21

U.S. Const. Amend. 14                                        13, 18, 20, 21

Fla. Const. Art. I, Sec. 9                                   13, 18, 20, 21

Fla. Const. Art. I, Sec. 13                                     18, 21

Fla. Const. Art. I, Sec. 16                                     18, 21

Fla. Const. Art. I, Sec. 17                           18, 21

Fla. Const. Art. I, Sec. 21                           18, 21

Fla. Const. Art. I., Sec. 22                          18, 21

Fla.R.Crim.P 3.850                            11, 12, 13, 19

Fla. R. Crim.P. 3.171(c)(2)                              19

Fla. R.App.P. 9.141(b)(2)(D)                            12

5

## PRELIMINARY STATEMENT

In this brief, Appellant, Qinard L. Collins Sr., will be referred to as the Defendant or Appellant.  Appellee, State of Florida, will be referred to as State or Appellee.  In addition, Appellant will refer to the appellate record by using the abbreviation "R" followed by the first word or initials of the name of the document in question, the word "at," and the relevant page number(s).  For example, page 3 of the Memorandum of Supporting Facts to Motion for PCR in support of Appellant's Motion for Postconviction Relief shall be cited herein as follows:  (R. Memorandum at 3).

## STATEMENT OF THE CASE AND FACTS

On April 2, 2001, Appellant called 911 to report that he had found his 10 month old son, Qinard Collins Jr., face down between his crib and mattress, gasping for air.  (R. Memorandum at 3).  Appellant began CPR until paramedics and police arrived.  Id.  Upon arrival, paramedics found the child was not breathing and had no pulse.  Id.  CPR was continued, an IV was started, and the child was transported to Flagler Hospital.  Id.  Shortly thereafter, the child was pronounced dead.  Id.  During treatment, the paramedics obnserved facial, chest, neck and arm bruising.  Id.  However, while Appellant attributed the facial bruises to father-son play, the chest, neck and arm bruises did not become visible until the paramedics arrived, and after

6

CPR had been instituted on the child.  Id.

Law enforcement verified that the child had been very sick. (R. Memorandum at 3).  In fact, the child spent most of his short life in the hospital (*i.e.*, 277 out of 305 days).  Id.  Even after his final discharge home, the child had been continued on intravenous antibiotics.  Id.  His final diagnoses included extreme prematurity, necrotizing enterocolitis, recurrent intestinal performations requiring repeated bowel resections, which in turn resulted in "short bowel syndrome," recurrent E coli infections, enterococcal septicemia, vitamin deficiencies, developmental delays, and choleastic jaundice.  Id.  Due to the child's recurrent series of critical medical events, particularly his recurrent series of bowel perforations, he had required prolonged in-hospital care and intravenous antibiotics which were continued at home for a short period before his death.  (R. Memorandum at 3-4).

On April 3, 2001, the Medical Examiner's Office (hereinafter also referred to as the "M.E.") performed a partial autopsy of the child.   (R. Memorandum at 4) (Emphasis added).  The M.E. told law enforcement that the child "was shaken, became unconscious, and never regained consciousness." (R. Memorandum at 4; Exh. A12). The M.E.'s shaken baby syndrome ("SBS") diagnosis was later renamed abusive head trauma, which was cited in the autopsy as the official cause of death, with battered child syndrome ("BCS") listed as the contributory cause, although no old injuries were found.  (R. Memorandum at 4).  Despite the child's grave and prolonged medical

7

history, both the M.E. and Flagler Hospital physicians attributed his brain hemorrhages and bruises to inflicted child abuse, notwithstanding the many nontraumatic medical causes of bruises and brain hemorrhages. Id.

On May 1, 2001, Appellant was charged with two felony counts in the Circuit Court of the Seventh Judicial Circuit in and for St. John's County, Florida. (R. Memorandum at 4). In Count One, Appellant was accused of "biting, striking, punching, pinching or battering" the child between March 17, 2001 and April 1, 2001, and of "willfully" torturing and/or maliciously punishing the child. (R. Memorandum at 4). In Count Two, he was accused of "hitting and/or shaking and/or striking said child on or about his head …" thereby causing his death on or about April 2, 2001. Id.

Advised by his plea counsel that there existed no credible defense to these charges, on August 8, 2003, Appellant pled no contest to Count Two. (R. Memorandum at 4). The State dismissed Count One pursuant to plea. Id. The State provided the factual basis for the plea since Appellant pled no contest and did not admit factual guilt. Id. This factual basis and plea was accepted by the Circuit Court; thereafter, on October 10, 2003, Appellant was sentenced to 30 years in prison. (R. Memorandum at 5).

On initial appeal, the brief submitted on Appellant's behalf presented no claims for relief. (R. Memorandum at 5). Thereafter, Appellant's initial postconviction motion submitted three claims for relief. Id. Ground One alleged newly discovered

8

evidence in the form of an adverse vaccine reaction article, but was found not to legally state a claim for relief and was accordingly denied on legal sufficiency grounds. Id. In his second claim, Appellant asserted that plea counsel should have investigated adverse vaccine reactions as a possible defense to the SBS charges, but did not claim that any prejudice flowed from this error. Id. This legally deficient claim was denied. Id. In his third claim, Appellant asserted that the factual basis was legally inadequate to support a second degree murder charge. Id. This claim was denied on procedural default grounds due to Appellant's failure to raise it on direct appeal. Id. Appellant appealed the denial of his initial postconviction motion; and thereafter, the denial of said motion was affirmed on appeal. (R. Order on Motion for Postconviction Relief at 1).

On January 7, 2011, Appellant filed *pro se* the instant Motion for Postconviction Relief and accompanying memoranda pursuant to Rule 3.850, Fla.R.Crim.P. (R. Motion for Postconviction Relief at 1 *et seq.*). On January 6, 2012, the Circuit Court issued an Order on Motion for Postconviction Relief (hereinafter also referred to as the "January 6, 2012 Order") dismissing Appellant's Motion. (R. January 6, 2012 Order at 3). Thereafter, on or about February 10, 2012, Appellant's Motion for Rehearing was filed. (R. Motion for Rehearing at 1 *et seq.*). Subsequently, on July 11, 2012, the Circuit Court issued an Order on Motion for Rehearing denying same on substantive grounds stating that: "The Court has reviewed and considered the Motion and finds

that the Motion makes no new argument or reference to any overlooked fact which would cause this Court to reconsider its previous determination." (R. Order on Motion for Rehearing at 1).

This appeal followed.

## SUMMARY OF ARGUMENT

The Circuit Court erred in summarily dismissing Appellant's postconviction relief motion and denying his Motion for Rehearing. Where, as here, the Circuit Court did not, and indeed could not, attach portions of the record conclusively showing that Appellant was not entitled to relief on each and every ground of his Rule 3.850 Motion, the Order dismissing Appellant's Motion for Postconviction Relief and the Order denying his subsequent Motion for Rehearing on the merits of said Motion should be reversed. This is especially true where, as here, the Circuit Court summarily dismissed Appellant's *pro se* Motion for Postconviction Relief without affording him an opportunity to amend his submission, and thereby compromised the Appellant's State and Federal Constitutional rights to due process of law and equal access to the court system.

# ARGUMENT

## ISSUE ONE

THE CIRCUIT COURT ERRED IN SUMMARILY DISMISSING
APPELLANT'S RULE 3.850 MOTION FOR POST-CONVICTION
RELIEF.

### A. STANDARD OF REVIEW

A postconviction court's decision whether to grant an evidentiary hearing on a

Rule 3.850 motion is ultimately based on written materials before the court; thus, its

ruling is tantamount to a pure question of law, subject to *de novo* review. *See* Franqui

v. State, 59 So.3d 82, 95 (Fla. 2011) (footnote omitted); *see also* State v. Pasko, 815

So.2d 680 (Fla. 2d DCA 2002) (dismissal subject to *de novo* review). In order for an

appellate court "[t]o uphold the ... [lower] court's summary denial of claims raised in a

3.850 motion, the claims must be either facially invalid or conclusively refuted by the

record." Peede v. State, 748 So.2d 253, 257 (Fla. 1999) (citing Fla.R.Crim.P.

3.850(d)).

If no evidentiary hearing was held, the appellate court must accept Appellant's

factual allegations as true to the extent they are not refuted by the record. *See e.g.*,

Goforth v. State, 15 So.3d 786, 788 (Fla. 5th DCA 2009); McLin v. State, 827 So.2d

948, 954 (Fla. 2002); Foster v. State, 810 So.2d 910, 914 (Fla. 2002). Under Florida

law, it is well-settled that unless the appellate record shows conclusively the movant is entitled to no relief, the order denying the postconviction motion shall be reversed and the cause remanded to the lower court for an evidentiary hearing or other appropriate relief. *See* Rule 9.141(b)(2)(D); <u>Moore v. State</u>, 870 So 2d 74, 75 (Fla. 2d DCA 2003). This is especially true where, as here, Appellant was litigating his motion *pro se*, and it was incumbent upon the postconviction court to make allowances and treat him fairly.

When a postconviction court fails to attach portions of the record supporting its determination that a motion was untimely filed, the appellate court should remand for further proceedings and, if on remand, it is determined that the motion was timely filed, the postconviction court should consider the merits of the motion. *See e.g.*, <u>Bracero v. State</u>, No. 2D11-4967, 2012 WL 2402586 (Fla. 2d DCA June 27, 2012). Thus, as a threshold matter, insofar as the postconviction court failed, in this case, to attach portions of the record supporting a determination that Appellant's motion was untimely filed, this Honorable Court should remand the case at bar for further proceedings, with instructions.

## B. <u>ARGUMENT ON THE MERITS</u>

With these established legal principles in mind, Appellant submits that the trial court erred when it summarily dismissed Appellant's 3.850 Motion without an evidentiary hearing.

Ground 1:    In Ground 1 of Appellant's 3.850 Motion, Appellant alleged that newly discovered evidence exists which proves his State and Federal Due Process rights were violated by his plea; and that he would have zealously exercised his right to go to trial had he known of said post-plea evidence. *See* U.S. Const. Amend. 5, 14; Fla. Const. Art. I, Sec. 9.   Per the Memorandum of Supporting Facts to Motion for PCR submitted by Appellant, the Constitutional Due Process doctrines which were violated and presented to the Circuit Court under Rule 3.850, Fla.R.Crim.P., were as follows:  (A) the right to an intelligent and voluntary plea process pursuant to Boykin v. Alabama, 395 U.S. 238 (1969); Bousley v. United States, 523 U.S. 614, 618-620 (1998), and Robinson v. State, 373 So.3d 898 (Fla. 1979); (B) the right to a plea process that is applied in a fair manner, Mathews v. Eldridge, 424 U.S. 319 (1976), that does not violate "fundamental fairness," Medina v. California, 505 U.S. 437 (1992), by founding the verdict upon evidence now known to be false, Napue v. Illinois, 360 U.S. 264 (1959); and (C) the right to have his conviction founded upon constitutionally sufficient evidence under Jackson v. Virginia, 443 U.S. 307 (1979) and Smith v. Mitchell, 437 F.3d 884 (9th Cir. 2006) (expert lacked sufficient evidence to support opinion).  (R. Memorandum at 5-6).

To prevail on a claim of newly discovered evidence, a movant must show the following:  (A) the evidence was unknown to the movant or his counsel and could not have been uncovered by due diligence at the time of trial; and (B) the evidence is such

13

that it would probably produce an acquittal on retrial. *See* Jones v. State, 591 So.2d 911, 915 (Fla. 1991) (Jones I). In evaluating the legal sufficiency of a motion based on newly discovered evidence, the postconviction court must accept the allegations as true for the purpose of determining whether the alleged facts, if true, would "render the judgment vulnerable to collateral attack." Arbalaez v. State, 775 So.2d 909, 915 (Fla. 2000).

In the instant motion, Appellant admits his former appellate counsel possessed medical records relevant to this case. (R. Memorandum at 5). However, his appellate counsel represented him *post-plea*. The Circuit Court failed to attach to its Order any portion of the record that conclusively establishes *plea* counsel knew of said records or with diligence could have uncovered same prior to plea. Moreover, while it is beyond dispute that some scientific studies relevant to the medical and biomedical aspects of Appellant's case existed at the time of plea and sentence; it is equally beyond dispute that additional scientific studies and report(s) relevant to the medical and biomedical aspects of Appellant's case have been produced throughout the decade subsequent to Appellant's plea and sentence as part of a "paradigm shift in the evaluation of pediatric head injury and contusion causation cases ..." (R. Memorandum at 9). Not surprisingly, of course, the Circuit Court failed to attach to its Order in the case at bar any portion of the record that conclusively establishes that Appellant, plea counsel or the court knew or should have known of these studies and report(s) now relied on by

14

Appellant.

As a result of its apparent failure to apprehend Appellant's claim, the Circuit Court improperly concluded that Appellant was not entitled to postconviction relief under a newly discovered evidence theory.   (R. January 6, 2012 Order at 2). Specifically, the Circuit Court stated that:  (A) "Defendant has failed to allege that the medical records he received in May 2009 could not have been ascertained, by the exercise of due diligence, prior to that time"; hence "Defendant's motion is untimely and will be dismissed"; and moreover (B) that "Defendant's [Appellant's] attorney could have known of such studies by the use of diligence, and Defendant [Appellant] would [therefore] not be entitled to a new trial on the basis of newly discovered evidence." Id.

Such a sweeping conclusion is not warranted in this case.  Nor is it supported by record attachments to the postconviction court's order, as required. *See* Bracero, *supra*.  As for the first conclusion reached by the Circuit Court, *supra*, Appellant submits that the primary focus of his postconviction claim was not the medical records themselves in isolation but the recent changes and the paradigm shift in suspected pediatric head trauma evaluations and the relevant scientific studies in the medical and biomechanical fields and a recent 2010 Pathology Report. (R. Memorandum at 20, 25, 28).

As to the second conclusion reached by the Circuit Court, *supra*, it is beyond

15

dispute that a plethora of the relevant scientific studies and other authorities cited and/or attached in support of the postconviction motion post-dated Appellant's plea. (*See e.g.*, R. Motion for Rehearing at 2). Per Appellant's Memorandum of Supporting Facts to Motion for PCR, in the years since Appellant pled, scientific research has "conclusively debunked SBS, on the paradigm shift in the evaluation of pediatric head injury and contusion causation cases which is sweeping through the country, and on the evidence that proves a `natural' causes death." (R. Memorandum at 9). For example, Appellant presented evidence that in 2006, the National Association of Medical Examiners declined to renew their endorsement of SBS. (R. Motion for Rehearing at 2). Yet another example of a key development was the 2005 study of Faris Bandak, Ph.D., a biomechanician and director of the United States National Highway Traffic Safety Administration Accident Reconstruction Division. (R. Motion for Rehearing at 3). Dr. Bandak concluded that human shaking could not cause lethal brain injuries in an infant but that violent shaking would cause structural and lethal neck failure, a phenomenon unreported in the literature—or this case. Id. These new scientific developments post-dated Appellant's plea and conviction in the instant litigation.

Moreover, Appellant presented evidence that he received a pathology report issued on September 27, 2010 (hereinafter also referred to as the "2010 Pathology Report") determining that the M.E. had misdiagnosed the death of the child. This 2010

report indicated that the misdiagnosis was caused, at least in part, by the M.E.'s failure to complete the autopsy: "The autopsy is sketchy and inadequate ... no ... full body X-rays ... no photographs ... no histologic microscopic examination ... would have been challenged had the case gone to trial ... a definitive test for vitamin K was done" resulting in "a tragic miscarriage of justice." As a practical matter, the 2010 report ostensibly benefitted from the continuing evolution of medical, forensic, and biomechanical knowledge during the past decade since Appellant entered his plea (*e.g.*, as enhanced by authorities including but not limited to Dr. Bandak and the National Association of Medical Examiners).

Hence, the Circuit Court's conclusion that Appellant's plea counsel could have known of as yet non-existent studies and report(s) by the use of diligence prior to plea is facially invalid. Furthermore, the Appellant argued in light of the recent paradigm shift in suspected pediatric head trauma evaluations (as reflected in the relevant studies, etc.), that his plea was founded upon false and unreliable evidence resulting in a manifest injustice in his case. *See e.g.*, Mathews, *supra*; Medina, *supra*; Napue, *supra*.

It must be kept in mind that the child in question suffered from serious medical conditions and was hospitalized for most of his short life, lending a considerable amount of credibility to the Appellant's insistence—backed by a plethora of experts— that the cause and manner of death was misdiagnosed by the M.E. in 2001, and that the

child actually died from natural causes. Thus, Appellant stated a colorable claim that the evidence was such that it would probably produce an acquittal on retrial. *See* Jones I, *supra.*

Notwithstanding this, the postconviction court failed to address said claim in its decision. This failure is particularly troubling in light of the manifest injustice presented in this case--and the fact that Appellant was a *pro se* litigant not afforded an opportunity to re-plead his claim, if needed, prior to its dismissal pursuant to Spera v. State, 971 So.2d 754 (Fla. 2007). Given that a number of scientific and medical authorities have rejected the SBS diagnosis resulting in Appellant's plea and conviction in the decade since he pled, it was contrary to State and Federal Constitutional principles of due process of law, access to courts, the right to counsel, the right to trial, fair play and substantial justice for the Circuit Court to reflexively deny Appellant's postconviction motion without an evidentiary hearing. *See e.g.*, U.S. Const. Amend. 5, 6, 14; Fla. Const. Art. I, Sec. 9, 13, 16, 17, 21, and 22. Appellant submits that he is innocent of the crime he was convicted of--with significant liberty interests at stake as he remains incarcerated based upon an inadequate autopsy with a misdiagnosis of pediatric head trauma improperly premised upon a now-debunked SBS theory refuted by experts, and that an evidentiary hearing is warranted on grounds of manifest injustice as well as newly discovered evidence.

Accordingly, the Circuit Court erred in dismissing Appellant's postconviction

18

claim, and its decision should be reversed remanded to the Circuit Court for further proceedings in conformity with the law, permitting Appellant to re-plead under Spera, *supra*, if necessary, and to proceed to an evidentiary hearing on Ground 1 of his motion as justice requires.

Ground 2:   In Ground 2 of Appellant's 3.850 Motion, Appellant asserted that his rights under Hill v. Lockhart, 474 U.S. 52 (1985) and Wiggins v. Smith, 539 U.S. 510 (2003) were violated when plea counsel failed to investigate the medical and biomechanical aspects of the State's injury-causation hypothesis, failed to consult with medical/biomechanical experts, failed to request exonerating medical tests, and failed to render legal advice.  Appellant further asserted that if his plea counsel had advised him of the pre-2003 exculpatory evidence referenced in his postconviction pleadings, and the defenses which would have flowed therefrom, he would have insisted on going to trial.

Florida Rule of Criminal Procedure 3.171(c)(2) provides in relevant part that legal counsel shall advise a defendant of "all pertinent matters bearing on the choice of which plea to enter and the particulars attendant upon each plea and the likely results thereof, as well as any possible alternatives that may be open to the defendant."  When a defendant enters a plea without having had the opportunity to be fully apprised of the facts, such a plea necessarily lacks the intelligence requirement and is rendered involuntary as running afoul of Constitutional protections. *Compare* Brady v. United

States, 397 U.S. 742 (1970) (plea of guilty is Constitutionally valid only to the extent it is voluntary and intelligent); North Carolina v. Alford, 400 U.S. 25 (1970) (the validity of a guilty plea is determined upon "whether the plea represents a voluntary, intelligent choice among the alternative courses open to the defendant"). *See also* Strickland v. Washington, 466 U.S. 668 (1984). Three requirements are essential in a criminal defendant foregoing his Constitutional right to a trial and entering a plea: (1) the plea must be voluntary; (2) the defendant must understand the nature of the charge and the consequences of his plea; and (3) there must be a factual basis for the plea. Williams v. State, 316 So.2d 267, 271 (Fla. 1975). Due to plea counsel's deficient performance in the instant case, each and every one of those requirements were not met here as required.

Notwithstanding this, the Circuit Court concluded that Appellant's motion was untimely and subject to dismissal due to a supposed pleading defect. (R. January 6, 2012 Order at 2). In so doing, the Circuit Court failed to attach to its Order portions of the record conclusively refuting Appellant's claim. Also, the Circuit Court failed to properly afford Appellant an opportunity to correct this manifest injustice consistent with the decision of the Florida Supreme Court in Spera, *supra*, and/or State and Federal Constitutional principles of due process, access to courts, the right to a trial, fair play and substantial justice. *See* U.S. Const. Amend. 5, 14; Fla. Const. Art. I, Sec. 9. Indeed, the Circuit Court failed to address Appellant's manifest injustice theory,

20

period. The postconviction Court's failure in this regard is particularly troublesome in light of the fact that Appellant submitted the motion at issue *pro se*, and Appellant remains convicted and imprisoned pursuant to plea based upon an SBS theory that has been successfully attacked by a plethora of biomechanical and medical experts before and after Appellant's plea, that have increased the level of scientific knowledge and understanding re: the invalidity of SBS theory. Surely, a plea based upon a pseudo-scientific theory debunked by many authorities as "junk science" should be susceptible to legal challenge.

In view of the fact that numerous scientific and medical authorities have rejected the SBS diagnosis resulting in Appellant's plea and conviction, his plea was contrary to State and Federal Constitutional principles of due process of law, access to courts, the right to counsel, the right to trial, fair play and substantial justice. *See e.g.*, U.S. Const. Amend. 5, 6, 14; Fla. Const. Art. I, Sec. 9, 13, 16, 17, 21, and 22. Appellant submits he is innocent of the crime he pled to with significant liberty interests at stake, and that an evidentiary hearing is warranted due to Constitutionally ineffective assistance of counsel resulting in an ill-advised plea, resulting in a manifest injustice to him.

As previously noted, it must be kept in mind that the child in question suffered from serious medical conditions and was hospitalized for most of his short life, lending a considerable amount of credibility to the Appellant's insistence—backed by a

plethora of experts—that the cause and manner of death was misdiagnosed by the M.E. in 2001, and that the child actually died from natural causes. Thus, Appellant's assertion that he would have proceeded to trial in this case had he but known of his defense(s), is a credible one. *See* Grosvenor v. State, 874 So.2d 1176, 1181-1182 (Fla. 2004) (holding that a defendant asserting an ineffective assistance of counsel claim relating to the failure to inform of the existence of a defense is not required to allege a viable defense; instead, the viability of the defense is relevant to the credibility of the assertion that the defendant would have insisted on going to trial if informed of that defense).

Accordingly, the Circuit Court erred in dismissing Appellant's postconviction claim, and its decision should be remanded to the Circuit Court for further proceedings in conformity with the law, permitting Appellant to re-plead under *Spera*, *supra*, if necessary, and proceed to an evidentiary hearing on Ground 2 of his motion as justice requires.

Ground 3:    In Ground 3 of Appellant's 3.850 Motion, Appellant asserted his "freestanding" actual innocence rights. *See e.g.*, House v. Bell, 547 U.S. 518 (2006), and Herrera v. Collins, 506 U.S. 390 (1993). Furthermore, Appellant invoked the doctrine of manifest injustice and moved the court to consider Grounds 1 and 2 of his pending postconviction motion under the rubric of Schlup v. Delo, 513 U.S. 298 (1995) and apply an actual innocence procedure/test to reach the merits of his claims.

Hence, the Circuit Court had the right—and the responsibility—to consider Appellant's claims in this light, particularly since the intervening years have revealed that the child's death was misdiagnosed and the so-called science underpinning the State's abuse theory has been debunked and rejected by numerous experts, including biomechanicists best-qualified to address the issue. (R. Motion for Rehearing at 2). Unfortunately, the Circuit Court's Order failed to address Ground 3 prior to dismissing Appellant's claims. For the sake of brevity, Appellant realleges and reincorporates here his arguments as to Grounds 1 and 2 and asserts that relief is warranted on this basis as well.

Accordingly, the Circuit Court erred in dismissing Appellant's postconviction claim, and its decision should be reversed and remanded to the Circuit Court for further proceedings in conformity with the law, permitting Appellant to re-plead under Spera, *supra*, if necessary, and proceed to an evidentiary hearing on Ground 3 of his motion as justice requires.

## **ISSUE TWO**

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR REHEARING.

### A.   **STANDARD OF REVIEW**

Appellant submits that the denial of his Motion for Rehearing is a question of law to be reviewed under a *de novo* standard. *See* Connor v. State, 803 So.2d 598 (Fla.

2001).

## B. <u>ARGUMENT ON THE MERITS</u>

In the aftermath of the Circuit Court's January 6, 2012 Order, Appellant filed a Motion for Rehearing on or about February 10, 2012, pointing out numerous matters overlooked or misapprehended by the Circuit Court. (R. Motion for Rehearing at 1 et seq.). Appellant demonstrated that contrary to the conclusion of the Circuit Court, numerous studies (and the 2010 Pathological Report) issued subsequent to Appellant's plea and sentence. As Appellant stated: "This Court has clearly overlooked that a plethora of the defendants state/Federal Due Process rights were violated, in light of his newly discovered evidence." (R. Motion for Rehearing at 5). The Circuit Court proceeded to rule on—and deny—Appellant's rehearing motion, addressing its merits, instead of denying it on any other technical grounds, consistent with a waiver thereof. Hence, the Circuit Court's refusal to grant Appellant postconviction relief (e.g., because his attorney allegedly could have known of such studies by the use of diligence) was invalid and properly subject to review on rehearing. (R. January 6, 2012 Order).

Accordingly, Appellant should be afforded appellate relief on this ground as well.

24

## **CONCLUSION**

WHEREFORE, based on the foregoing argument and citations of authority, Appellant prays this Honorable Court will reverse the Circuit Court's order(s) summarily dismissing the claims presented in Appellant's Motion For Post-Conviction Relief (as amended) and denying Appellant's Motion for Rehearing, and remand this case for further proceedings in conformity with the law, permitting Appellant to re-plead under Spera, *supra*, if necessary, and proceed to an evidentiary hearing as justice requires.

Respectfully submitted,

Mary Elizabeth Fitzgibbons, Esq.
Fitzgibbons Law P.A
21 S. Clyde Ave. #3
Kissimmee, FL 34741
Phone (407) 343-1777
Fax    (407) 343-1677
Fla. Bar No.  0056480
Attorney for Appellant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Office of the Attorney General, 444 Seabreeze, 5th Floor, Daytona Beach, FL 32118 by U.S. mail delivery, postage pre-paid, this 3rd day of December, 2012.

## CERTIFICATE OF E-FILING

I HEREBY CERTIFY that a true and correct copy of the foregoing has been e-filed to the 5th District Court of Appeal, this the 3rd day of December, 2012.

Respectfully submitted,

Mary Elizabeth Fitzgibbons, Esq.
Fitzgibbons Law P.A
21 S. Clyde Ave. #3
Kissimmee, FL 34741
Phone (407) 343-1777
Fax     (407) 343-1677
Fla. Bar No.  0056480
Attorney for Appellant

## <u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY that this brief complies with the font requirements of

R.9.210 and features Times New Roman font size 14.

Respectfully submitted,

Mary Elizabeth Fitzgibbons, Esq.
Fitzgibbons Law P.A
21 S. Clyde Ave. #3
Kissimmee, FL 34741
Phone (407) 343-1777
Fax     (407) 343-1677
Fla. Bar No.  0056480
Attorney for Appellant

27

GG

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

QINARD COLLINS,

          Appellant,

v.

                              Case No. 5D12-3200

STATE OF FLORIDA,

          Appellee.

_____/

**RESPONSE TO APPELLANT'S BRIEF FILED ON APPEAL FROM
SUMMARY DENIAL OF COLLATERAL MOTION**

      Appellee, the State of Florida, pursuant to Florida Rule of Appellate Procedure 9.141(b), files this response to Appellant's initial brief and states:

      Appellant appeals from the summary denial of a Florida Rule of Criminal Procedure 3.800(a) or 3.850 motion. The State declines to file an answer brief in this cause, unless this Court so requests. See Ketion v. State, 548 So. 2d 778 (Fla. 1st DCA 1989); Toler v. State, 493 So. 2d 489 (Fla. 1st DCA 1986).

                       Respectfully submitted,

                       PAMELA JO BONDI
                       ATTORNEY GENERAL

                       /s/ Lori N. Hagan
                       LORI N. HAGAN
                       ASSISTANT ATTORNEY GENERAL
                       Florida Bar No. #0971995
                       444 Seabreeze Boulevard, Fifth Floor
                       Daytona Beach, FL 32118
                       (386)238-4990/fax (386) 238-4997
                       crimappdab@myfloridalegal.com
                       lori.hagan@myfloridalegal.com

                       COUNSEL FOR APPELLEE

## DESIGNATION OF E-MAIL ADDRESS

The State designates crimappdab@myfloridalegal.com as its primary email address and lori.hagan@myfloridalegal.com as its secondary address.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Response has been furnished via electronic mail to Counsel for Appellant, Mary Elizabeth Fitzgibbon, fitzgibbons_marye@hotmail.com, this 26th day of December, 2012.


/s/ Lori N. Hagan
Counsel for Appellee

# HH

IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT                                    JANUARY TERM 2013

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

QINARD COLLINS,

        Appellant,

v.                                                Case No.  5D12-3200

STATE OF FLORIDA,

        Appellee.

_____/

Decision filed February 12, 2013

3.850 Appeal from the Circuit Court
for St. Johns County,
Wendy W. Berger, Judge.

Mary  Elizabeth Fitzgibbons,
of Fitzgibbons Law, P.A.,
Kissimmee, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Lori N. Hagan,
Assistant Attorney General, Daytona
Beach, for Appellee.


PER CURIAM.


      AFFIRMED.


PALMER, TORPY and LAWSON, JJ., concur.

# II

# M A N D A T E

from

## DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

# FIFTH DISTRICT

THIS CAUSE HAVING BEEN BROUGHT TO THIS COURT BY APPEAL OR BY PETITION, AND AFTER DUE CONSIDERATION THE COURT HAVING ISSUED ITS OPINION OR DECISION;

YOU ARE HEREBY COMMANDED THAT FURTHER PROCEEDINGS AS MAY BE REQUIRED BE HAD IN SAID CAUSE IN ACCORDANCE WITH THE RULING OF THIS COURT ATTACHED HERE TO AND INCORPORATED AS PART OF THIS ORDER, AND WITH THE RULES OF PROCEDURE AND LAWS OF THE STATE OF FLORIDA.

WITNESS THE HONORABLE RICHARD B. ORFINGER, CHIEF JUDGE OF THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA, FIFTH DISTRICT, AND THE SEAL OF THE SAID COURT AT DAYTONA BEACH, FLORIDA ON THIS DAY.

DATE: March 08, 2013

FIFTH DCA CASE NO.: 5D 12-3200

CASE STYLE:  QINARD COLLINS       v.       STATE OF FLORIDA

COUNTY OF ORIGIN: St. Johns

TRIAL COURT CASE NO.:  CF01-1102

I hereby certify that the foregoing is
(a true copy of) the original Court mandate.

*Pamela R. Masters*

PAMELA R. MASTERS, CLERK

cc:

Lori N.Hagan                    Office Of Attorney General            Mary Elizabeth Fitzgibbons
St.Johns Co.Circuit Ct.