**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

QINARD LAMAR COLLINS,

    Petitioner,

v.                                                  Case No. 3:14-cv-47-J-32PDB

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

    Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing, through counsel, a Petition for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) (Petition)[1] pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2003 state court (St. Johns County, Florida) judgment of conviction and sentence for second degree murder. Petitioner is serving a thirty-year prison sentence after pleading no contest. He challenges the judgment of conviction and sentence on a claim of actual innocence based on newly discovered evidence. Respondents filed their response arguing the Petition is untimely and without merit. See Response to Petition (Doc. 9) (Response).[2] Petitioner replied. See Petitioner Collins' Reply to the Respondents' "Response to Petition" (Doc. 12) (Reply).

---

[1] Citations to Petitioner's filings refer to the page numbers assigned by the Court's electronic case filing system.

[2] The Court refers to the exhibits attached to the Response as "Ex."

Because Petitioner's actual innocence claim appeared to have arguable substance, and to allow Petitioner to develop the record for appellate review, the Court conducted a non-evidentiary hearing on June 6, 2017 (Doc. 16). At the hearing, Petitioner's counsel clarified that Petitioner was asserting only a freestanding claim of actual innocence. Further, Petitioner's counsel conceded that the Petition was foreclosed by Eleventh Circuit precedent. Nevertheless, Petitioner seeks a certificate of appealability to the Eleventh Circuit.

## **II. Findings of Fact and Conclusions of Law**

"A state prisoner's § 2254 habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA). Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). The AEDPA amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

2

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "The limitations period[, however,] can be tolled in two ways: through statutory tolling or equitable tolling." Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008). With regard to statutory tolling, 28 U.S.C. § 2244(d)(2) provides: "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). For equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (recognizing that equitable tolling is an extraordinary remedy that is "limited to rare and exceptional circumstances and typically applied sparingly"); see also Brown, 512 F.3d at 1307 (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence."). Further, "actual innocence, if proved, serves as a gateway through which a petitioner may pass [notwithstanding the] expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).

For challenges based on newly discovered evidence, such as the case here, the limitations period runs from the date "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); see McQuiggin, 133 S. Ct. at 1929. Petitioner's claim relies on medical

3

reports written on August 15, 2009; August 27, 2009, August 30, 2009; December 7, 2009; and September 27, 2010. Ex. Z. Therefore, at the latest, Petitioner became aware of his claim on September 27, 2010.[3] As a result, Petitioner's limitations period commenced on September 28, 2010. Ninety-nine (99) days ran before Petitioner filed a state post-conviction motion on January 5, 2011. Ex. W. Assuming arguendo statutory tolling applies,[4] the post-conviction motion tolled the limitations period until March 8, 2013, when the Fifth District Court of Appeals issued its mandate affirming the state trial court's denial of the motion (Ex. II). See Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (holding that a Florida post-conviction motion remains pending until the appellate court's mandate issues). Thereafter, the limitations period ran from March 9, 2013 for two hundred and sixty-six (266) days until November 30, 2013, when the one year limitations period expired. Petitioner did not file his Petition until January 13, 2014. Therefore, the Petition is untimely unless some exception applies.[5]

As a way to avoid the limitations period and to have the Court grant him habeas relief, Petition makes a freestanding actual innocence claim. However, the United States Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin, 133 S. Ct. at 1928. And,

---

[3] The Court notes that Petitioner acknowledges that the last report just "concurred in full" with the findings found in the other reports. (Doc. 2 at 4).

[4] On January 6, 2012, the state trial court denied the post-conviction motion as untimely and on the merits. Ex. BB. "[A] state post-conviction petition rejected by the state court as being untimely under state law is not 'properly filed' within the meaning of AEDPA's § 2244(d)(2)," and therefore, is not subject to statutory tolling. Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316 (11th Cir. 2006).

[5] Petitioner does not allege or seek to establish equitable tolling or the actual innocence exception to the limitations period.

as recognized by Petitioner's counsel, the Eleventh Circuit, which this Court must follow, does not allow habeas relief based on a freestanding claim of actual innocence in non-capital cases. See Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1272 (11th Cir. 2010) ("this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases"); Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) ("our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases"); see also Herrera v. Collins, 506 U.S. 390, 390–91 (1993) ("claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings").

But even assuming a freestanding claim of actual innocence is cognizable in a federal habeas proceeding, at minimum, to receive relief, Petitioner must meet the threshold requirement used to overcome the statute of limitations bar which is that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329 (1995); see McQuiggin, 133 S. Ct. at 1928. This demanding standard sets an extremely high bar for Petitioner. See McQuiggin, 133 S. Ct. at 1928 (recognizing "tenable actual-innocence gateway pleas are rare"); House v. Bell, 547 U.S. 518, 538 (2006) ("it bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case").

In 2001, Petitioner was charged with first degree murder and aggravated child abuse of his infant child based on the medical examiner's conclusion that the cause of the child's death was "due to abusive head injury with evidence of multiple abusive injuries

over varied periods in time which made a battered child syndrome as a contributory cause of death." See Exs. A, O. The State gave its notice of intent to seek the death penalty. Ex. B. On August 8, 2003, Petitioner, under a plea deal, entered a plea of nolo contendere to a lesser-included offense of second degree murder. Ex. I.

Now, Petitioner argues that based on newly discovered evidence, the medical examiner (ME), misdiagnosed the cause of his child's death as "shaken baby syndrome" (SBS). Petitioner presents reports from Dr. Harold Buttram,[6] Dr. Michael Innis, Dr. Robert Mendelsohn, and Dr. Peter Stephens ("Medical Doctors") who reviewed the ME's autopsy report and other relevant documents, and opined that the child's death was not the result of SBS or abusive head injuries. Ex. Z. They agreed that the child's injuries and death were the result of complications of the child's prematurity, including short bowel disease and a vitamin K deficiency.

Petitioner asserts that between the time of the child's autopsy in 2001 and the Medical Doctors' reports in 2009, the medical community "shifted" away from the school of thought that a child's symptoms of brain swelling and bleeding to the retina and surface of the brain, such as those exhibited in the case, was automatic evidence of SBS. Petitioner contends that now the medical community recognizes that there can be other causes or explanations for those symptoms unrelated to SBS.[7] In response, both in writing and at the hearing, the State says because Petitioner pleaded no contest, there was no trial and Petitioner cannot assert now that he is actually innocent. The State also

---

[6] During the hearing, the parties advised the Court that Dr. Buttram is now deceased.

[7] The Court acknowledges that federal courts are now being tasked with dealing with this issue. See Del Prete v. Thompson, 10 F. Supp. 3d 907 (N.D. Ill. 2014).

disputes the new medical reports, states it could provide medical testimony to validate the ME's conclusion, and cites other evidence it says supports the conviction. See Response at 9-10 (Doc. 9).[8] Thus, while there is arguable substance to Petitioner's actual innocence claim, it is not established that Petitioner could show that no juror, acting reasonably, would have voted to find Petitioner guilty beyond a reasonable doubt if the case had gone to trial.[9]

Petitioner takes the forthright position that he seeks to change the Eleventh Circuit precedent disallowing freestanding actual innocence claims. While the Eleventh Circuit has the power to grant Petitioner a certificate of appealability, this Court will deny a certificate of appealability based on the existing precedent.

## III. Conclusion

After due consideration, it is

**ORDERED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment dismissing this case with prejudice and close this case.

---

[8] In particular, the State intended to rely on evidence from the mother of the child that (1) on or about March 17, 2001, upon her return from the hospital she noticed injuries to the child that were inflicted by Petitioner; (2) on March 28, 2001 and March 29, 2001, Petitioner struck the child in the face; and (3) Petitioner struck a puppy with a hammer because the puppy was a "weakling." Notice of Intent to Rely on Collateral Crime Evidence; Ex. E.

[9] Because Eleventh Circuit precedent bars freestanding actual innocence claims, the Court did not take the additional step of conducting an evidentiary hearing.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk of the Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of June, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sflc

c: Counsel of Record